**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**UNITED STATES OF AMERICA**

**V.**                                            **CRIMINAL ACTION NO. 2:16-CR-7-KS-MTP**

**CHARLES BOLTON and
LINDA BOLTON**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Stay Self-Reporting Date [198] filed by Defendant Charles Bolton and the Motion to Stay Self-Reporting Date [199] filed by Defendant Linda Bolton.[1] After considering the submissions of the parties, the record, and the applicable law, the Court finds that these motions are not well taken and should be denied.

## I. BACKGROUND

On March 22, 2016, a federal grand jury indicted Defendants Charles Bolton ("Charles") and Linda Bolton ("Linda") (collectively "Defendants") on five counts of attempted tax evasion for the years 2009-2013 (Counts 1-5) and five counts of filing false tax returns for those same years (Counts 6-10). Attorney Joe Sam Owen ("Owen") filed his initial appearance on behalf of Charles on March 28, 2016. Attorney Paul Holmes ("Holmes") initially appeared in this case on behalf of Linda at her initial appearance before the magistrate judge on March 31, 2016. Parties are husband and wife, and represented to the Court that there was a joint defense agreement between them. It was discussed on the record that Owen was taking the lead in the defense.[2] He hired experts to review the records and provided help in the defense of both Defendants.

---
[1] These motions are collectively referred to as the "Motions to Stay [198] [199]."
[2] This discussion took place during the disqualification hearing held before the Court on July 28, 2016.

Trial was initially set for May 23, 2016. Defendants filed a joint Unopposed Motion to Continue [17] on April 25, 2016. The Court granted this motion on April 29, 2016, and the trial date was then set for July 18, 2016.

Attorney James K. Dukes ("Dukes") filed his appearance in the case on behalf of Linda on June 22, 2016, less than four weeks before trial. It was represented to the Court by both Dukes and Owen on the record in multiple hearings that Dukes was retained by Linda because Holmes needed some help understanding the case and had not practiced in federal court in a number of years. Despite the circumstances and the short time her new attorney had to prepare for the impending trial, Linda did not file for a continuance.

Due to courtroom unavailability[3] and after conferring with the parties to ascertain any objections, the Court *sua sponte* continued the case until August 22, 2016.

Because they were potential witnesses in the case,[4] Holmes and Dukes were disqualified from the case in a hearing on July 28, 2016,[5] and the Court gave Linda ten days to find new representation. On August 8, 2016, the deadline the Court originally gave Linda to find a new attorney, Attorney Lisa Ross ("Ross") entered her appearance on behalf of Linda. Attorney Carlos Tanner ("Tanner") attempted to enter his appearance as well, but it was not properly filed. Tanner did not properly enter his appearance in the case until August 12, 2016. Nevertheless, both Ross and Tanner appeared on behalf of Linda on August 10, 2016, at a telephonic hearing pertaining to the possibility of attaining a continuance in this case. The Court advised parties that a motion to continue had to be filed before it could grant a continuance. The Court further informed the parties that the only trial dates available to continue the case until would be either August 29, 2016, or

---

[3] Both courtrooms in Hattiesburg were undergoing renovations and were not serviceable for most of the month of July.
[4] Checks from both attorneys were included as evidence of Defendants' undisclosed income.
[5] This disqualification hearing occurred after the Government filed its Motion to Disqualify [26] on July 15, 2016.

September 12, 2016, due to the scheduling constraints caused by the Court's own docket as well as Owen's and AUSA Fred Harper's conflicts,[6] which had long been brought to the attention of the Court. When Ross asked about dates in December, the Court advised her that it did not feel such a long continuance would be appropriate given the nature of the case, but that it would consider any arguments she may make if she filed a motion.

On August 12, 2016, the Court held a telephonic conference with the parties to remind them that, because a motion for continuance had yet to be filed and the trial date was still set for August 22, proposed jury instructions and the parties' exhibit and witness lists were due the following Monday, August 15, 2016. Ross informed the Court that she intended to file a motion for continuance that day on behalf of Linda, and Owen confirmed that he would join in whatever motion she filed on behalf of Charles. Ross contacted the Court later that date seeking information regarding the ordering of transcripts of previous proceedings. She then filed the Motion to Continue [42] [43][7] on behalf of Linda late that evening, after business hours. Because it was a Friday, the Court did not receive the motion until the morning of August 15, 2016. Nevertheless, on August 16, 2016, the Court granted the Motion to Continue [42] [43] and continued the trial date to September 12, 2016.

Attorney Robert McDuff ("McDuff") entered his appearance in this case on August 26, 2016, eighteen days before the trial date. Less than a week later, on September 1, 2016, McDuff filed a second Motion to Continue [69] on behalf of Linda, less than two weeks before trial. On September 2, 2016, Ross filed her Motion to Withdraw as Attorney [72].

---

[6] Owen informed the Court much earlier in the case that he would be unavailable for the entire month of October. AUSA Harper was equally upfront with the Court about his unavailability during November.
[7] Charles filed his Notice of Joinder [43] that same day.

The Court issued its rulings on these motions on September 8, 2016.[8] In its Order [81] denying the Motion to Withdraw as Attorney [72], the Court found that Ross had not shown good cause as to why she should be allowed to withdraw from the case. (*See* Order [81] at pp. 3-4.) In its Order [82] denying the Motion to Continue [69], the Court found, in light of the multiple continuances already granted in the case, that Linda's purported reasons for a continuance did not warrant such an action.[9]

On September 9, 2016, counsel for John Lee, a local attorney and potential witness in this case, filed a Motion to Quash Trial Subpoena and Rule 17 Subpoena [84] on his behalf. Because this motion pertained to a witness subpoenaed for the trial, the Court continued the trial by one day and heard arguments pertaining to this motion on September 12, 2016. The Court ultimately denied the motion.

Trial began on September 13, 2016, and the government rested its case on September 15, 2016, after presenting several witnesses and exhibits. Defense called one witness and rested that same day. After deliberations, the jury returned a verdict of guilty for Charles on Counts 2-10 and for Linda on Counts 6-10. Both Defendants were found not guilty as to Count 1. The jury was unable to reach a verdict as to Counts 2-5 with respect to Linda Bolton, and the Court declared a mistrial as to those counts.

On September 28, 2016, Charles filed his Motion for a Judgment of Acquittal and the Conditional Grant of a New Trial or, Alternatively, Motion for a New Trial [118], and Linda filed

---

[8] On that same date, the Court also issued rulings on the multiple motions *in limine* [47][48][49][50] filed on behalf of the Government and Charles.
[9] Linda gave two reasons: (1) an official review of the investigation by DOJ and (2) the need for her attorney to prepare. The Court did not find these reasons persuasive because (1) there was no proof of an official review by DOJ and (2) McDuff entered the case with full knowledge of the impending trial date and when Linda was already presented by two other attorneys. It was also clear from the record that Owen had hired experts who were working on behalf of both Linda and Charles.

her Motion for a Judgment of Acquittal or, in the Alternative, for a New Trial [119] a day later on September 29, 2016. Both motions were fully briefed, and the Court entered its Order [127] denying them both on November 4, 2016.

Sentencing was originally set for December 19, 2016. On that date, Owen and counsel for the Government requested an in camera meeting with the Court and made a joint request for a continuance, citing Charles's willingness to cooperate with the Government in connection with ongoing investigations. Linda made no objection to this continuance. The sentencing was then continued to January 18, 2017. Owen and counsel for the Government contacted the Court again on January 13, 2017, requesting the Court to continue the sentencing once more to allow Charles more time to speak with agents of the Government. Sentencing was then continued to February 3, 2017, again with no objection from Linda. On January 24, 2017, because of internal scheduling conflicts of the Court,[10] sentencing was continued once again, with the consent of the parties, and set for March 17, 2017.

On March 15, 2017, Owen filed his Motion to Deem Attorney-Client Privilege Waived [151], stating that Charles had terminated his representation and was now attempting to allege Owen had conducted himself unethically during his representation of Charles. At the time, Charles was also represented by Robert Nathan Udashen ("Udashen"), who represented that he would not be present for the sentencing hearing as his representation was for the appeal phase only, and Samuel S. McHard ("McHard"), who served as local sponsoring counsel for the pro hac vice admission of Udashen and also did not intend to attend the sentencing hearing. The Court learned through the filings connected with Owen's motion that Charles had apparently hired

---

[10] The undersigned was the presiding judge over a case pending in the Northern District of Texas, which was set for a three-week trial in February.

Alabama Attorney Willie J. Huntley ("Huntley") some time during the prior week and that Huntley intended to represent Charles at the sentencing hearing. Despite these intentions, Huntley had not entered an appearance in the Court and had not filed a motion for pro hac vice admission, as required by an out-of-state lawyer not licensed to practice in Mississippi.[11]

On March 17, 2017, prior to the sentencing hearing, the Court heard in camera arguments as to the Motion to Deem the Attorney-Client Privilege Waived [151].[12] During these arguments, the Government represented to the Court that Charles, despite his promises to cooperate, had given its agents no useful information despite the continuances of sentencing granted by the Court and that, as a result, it was ready to move forward with the sentencing with no further delay. Despite his previous termination of Owen's representation, Charles allowed Owen to represent him at the sentencing hearing as he had no other counsel present[13] and did not wish to utilize the Federal Public Defender.[14]

After the in camera arguments, the sentencing hearing was held in open court. Over the objections of the Defendants, the Court adopted the Pre-Sentence Report's calculated sentencing guideline range of 27 to 33 months for both Charles and Linda. The Court then sentenced Linda to 30 months confinement per count with the Federal Bureau of Prisons ("BOP"), to be served concurrently. Charles was sentenced to 33 months confinement as to Counts 2 through 5, to run concurrently, and 12 months confinement for Counts 6 through 10, to run concurrently with each other but consecutively with the 33-month sentence under Counts 2 through 5, for a total of 45

---

[11] In fact, despite the Court allowing him to appear unofficially on behalf of Charles at the sentencing hearing, Huntley did not move to appear pro hac vice until March 29, 2017.
[12] These arguments were heard on the record.
[13] As previously stated, Huntley was allowed to unofficially appear on behalf of Charles despite not being properly admitted as pro hac vice counsel.
[14] As a precautionary measure, the Court had requested the presence of an attorney from the Federal Public Defender's Office be present at the sentencing hearing and in the in camera hearing, to allow Charles an additional option for the sentencing hearing.

months confinement in the custody of the BOP.[15] Judgment was entered in the case on March 28, 2017. (*See* Judgments [165] [166].) Defendants were allowed to self-surrender to the custody of the BOP as notified by the U.S. Marshal, but no later than 60 days from the date of sentencing.

Owen and his firm requested to withdraw from this case on March 22, 2017, but requested to reserve the right to respond to any filings related to their representation. The Court granted this motion on March 29, 2017. (*See* Order [167].) Also on March 29, the Court issued an Order [168] denying without prejudice Owen's previous Motion to Deem Attorney Client Privilege Waived [151], finding that such an action was not necessary at that point in time but stating that the issue could be re-urged should it become relevant.

Huntley and his associate, Attorney Dennis James Knizley ("Knizley") were admitted pro hac vice on March 29, 2017. On March 30, 2017, Margaret W. Holmes ("Margaret")[16] entered an appearance on behalf of both Defendants. On March 31, 2017, Knizley filed a Notice of Appeal [172] on behalf of Charles. Subsequently, on April 3, 2017, Huntley requested that Notice of Appeal be dismissed without prejudice, as it was filed in error. The Court granted this request that same day. (*See* Order [174].)

On April 11, 2017, Huntley filed the following motions on behalf of Charles: a Motion for New Trial Due to Defense Counsel for Defendant Charles Bolton Commenced the Representation with an Actual Conflict [175], and a Motion to Vacate Conviction and Sentence and in the Alternative, for New Trial Under Federal Rule of Criminal Procedure Rule 33 and Request for *Garcia* Hearing[17] [177]. That same day, Huntley filed a Notice of Appeal [180] on Charles's

---

[15] This was an upward variance from the sentencing guideline range, which the Court imposed because of Charles's position as a high-ranking law enforcement official and other reasons stated in open court.
[16] Margaret is the daughter of the previously disqualified Holmes, and works at the Holmes Law Firm.
[17] The term "*Garcia* hearing" is a reference to the Fifth Circuit's decision in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), and is commonly understood to be a pre-trial hearing held when "a defendant chooses to proceed with representation by counsel who has a conflict of interest" in order for the district court "to ensure a valid waiver by the

7

behalf. Also on April 11, 2017, Attorney Ursula K. Mitchell ("Mitchell") entered an appearance on behalf of Linda, and Attorney Sharon Denotra Henderson ("Henderson") entered an appearance on behalf of Charles. Both Mitchell and Henderson also filed Motions for New Trial [178] [181][18] for their clients. That same day, McDuff filed a Notice of Appeal [182] on behalf of Linda.

The Court issued an Order [183] on April 12, 2017, terminating all pending Motions for New Trial [175] [177] [178] [181], finding that it did not have jurisdiction over the matters they involved. *See United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) *superceded by statute on other grounds as stated in United States v. Martinez*, 763 F.2d 1297, 1308 (11th Cir. 1985) (citations omitted); *see also* Fed. R. Civ. 33(b)(1) ("If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.")

On April 21, 2017, Defendants filed their Motions to Seal [189][190],[19] asking for leave to file certain confidential medical information under seal for purposes of forthcoming motions to stay the Defendants' self-report dates. The Court entered its Order [191] granting these motions on April 24, 2017.[20] The Motions to Stay [198] [199] were subsequently filed on April 26, 2017. Defendants have represented to the Court that their report dates are May 2, 2017, and May 3, 2017, respectively. Because Defendants waited so long to file their Motions to Stay [198] [199], the Court was forced to order expedited briefing on these motions.

The Court learned on April 26, 2017, that Defendants had motions for bail pending appeal in the Fifth Circuit, which could potentially impact the Court's rulings on the Motions to Stay

---

defendant of his Sixth Amendment right." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (citations omitted).

[18] These motions are referred collectively with Charles's motions as the "Motions for New Trial [175] [177] [178] [181]."

[19] These motions were entitled "Motion to Stay Self-Report Date," but the event chosen when filing these documents was "Motion to Seal." The Court interpreted them, not as motions to seal, but as motions for leave to file under seal, as that was the relief asked for in the motions.

[20] The Motions to Seal [189] [190] were filed on a Friday, and the Court was unable to address them until the following Monday.

[198] [199] pending before it.[21] After consulting with staff attorneys at the Fifth Circuit, it was decided that the best course of action was for the Court to request a remand pursuant to Federal Rule of Appellate Procedure 12.1(b),[22] in order to streamline the proceedings and to allow for factual findings to be made on the issues in the Motions for New Trial [175] [177] [178] [181]. The Fifth Circuit panel issued a per curiam order remanding the case on April 27, 2017, divesting itself of jurisdiction and denying all pending motions before it as moot. (*See* Order of USCA [205].) The Court issued an Order [206] on April 27, 2017, reviving the Motions for New Trial [175] [177] [178] [181] and setting briefing deadlines.

Briefing has concluded as to the Motions for Stay [198] [199], and the Court is now ready to rule on these motions.

## II. DISCUSSION

The Court is uncertain which authority or precedent Defendants purport to bring their Motions to Stay [198] [199] under, as they cite none in their accompanying memoranda. These motions are not and will not be interpreted as motions for bail pending appeal under 18 U.S.C. § 3143(b). Self-surrender is a privilege that is afforded to low-risk defendants in order to save the government the expense of transportation and to make the transition to confinement as humane as possible. *See United States v. Savage*, 888 F.2d 528, 529 (7th Cir. 1989) (calling voluntary surrender a "privilege"); *United States v. Polouizzi*, 760 F.Supp.2d 284, 288 (E.D.N.Y. 2011) (stating that self-surrender "saves the government the expense of transportation and avoids the harshness involved in requiring a long and difficult journey from court to prison while shackled,

---

[21] Also on April 26, 2017, adding to the confusion of the case, yet another attorney, William Walter, made an appearance on behalf of both Defendants. Three days later, on April 28, 2017, Mary Lee Holmes made an appearance on behalf of both Defendants as well.

[22] Federal Rule of Appellate Procedure 12.1(b) allows a district court to request remand in order to consider a motion that "raises a substantial issue."

9

handcuffed and chained.") In fact, self-surrender is a common but extremely limited exception to § 3143(b), which requires the detention of "a person who has been found guilty of an offense and sentenced to a term of imprisonment" unless the Court finds, after an appropriate motion,

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; *and*

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b) (emphasis added).

Defendants make no mention of this statute in their original motions. They do, however, mention it in their Replies [209] [210],[23] though they make no detailed argument, only stating perfunctorily that their pending motions "have an extremely high probability in not only resulting in lesser sentences, but very likely will lead to exonerating the Boltons."[24] (Reply [209] at p. 3; Reply [210] at pp. 3-4.) Defendants also conflate § 1343(b) with 18 U.S.C. § 3142, the statute dealing with bail *prior* to trial, mistakenly arguing that they are not presumed to be ineligible for

---

[23] The Court will not consider the additional Replies [211] [212] [216] filed by Defendants. Each Defendant is allowed only one reply to the Government's Response [204]. Additionally, these Replies [211] [212] were filed after the noon deadline imposed by the Court. (*See* Order [200].) The original Motions to Stay [198] [199] were filed by Mitchell and Henderson, and they were the attorneys who issued the Replies [209] [210] timely filed and considered by the Court. Furthermore, the Reply [211] for Charles was filed by Margaret but signed by William Walter. The Reply [212] for Linda was filed by Margaret but signed by Mary Lee Holmes. The fact that these Replies [211] [212] were filed by an attorney other than the attorneys who signed them would be reason enough for the Court to strike them.

[24] Even if this were sufficient to raise the argument that the requirements of § 3143(b) are met, which the Court does not find, the Court ordinarily does not consider arguments raised for the first time in reply briefs, unless good cause is given and the opposing party is afforded an opportunity to respond.

10

bail because of this statute. However, as convicted and sentenced persons, both Defendants without a doubt fall under § 3143(b) and are not eligible for bail unless the requirements under that statute are met, which has not been shown. *See United States v. Otis*, 450 F.3d 583, 585 (5th Cir. 2006) (citing *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) (stating the long-understood rule that "[a] convicted defendant has no constitutional right to bail" and that § 3143 "establishes a presumption against" bail for convicted and sentenced defendants). The Court would further reiterate that Defendants have not moved for bail pending appeal, but rather have moved for a stay of their self-report dates. The type of relief requested is not available under any authority of which the Court is aware.

Even if the Court were certain of its authority to grant the relief requested by Defendant, they make only two arguments in support of their Motions to Stay [198] [199]. First, they argue that both Defendants are currently awaiting a decision by the Fifth Circuit as to the proper jurisdiction of their Motions for New Trial [175] [177] [178] [181] and that they both will need to be available to testify at a hearing to determine these jurisdictional issues. This argument is moot as the Fifth Circuit has remanded the case back to this Court to decide these motions and has divested itself of any jurisdiction. Furthermore, if any hearing is necessary for these motions, transportation to the Court will be provided to Defendants by the BOP.

Second, Defendants argue that their medical conditions are so serious as to necessitate a stay of their self-surrender dates. However, Defendants have made no attempts to contact the BOP to ascertain what medical treatment will be available to them during their incarceration, despite being convicted over seven months ago and sentenced over a month ago. Instead, Defendants have waited until just over a week before their self-surrender dates to file their Motions to Stay [198]

11

[199], continuing a pattern of delay evident throughout these entire proceedings.[25]  Furthermore, Defendants have failed to show that their medical conditions are so serious as to be beyond the capabilities of the BOP to accommodate.  *See, e.g., United States v. Guajardo*, 950 F.2d 203, 208 (5th Cir. 1991) (finding nothing extraordinary requiring relief from incarceration in a 55-year-old male defendant suffering from cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency).

Because it finds the reasons given unpersuasive, the Court does not find that Defendants have shown that they are entitled to the requested relief.  The Court will therefore **deny** the Motions to Stay [198] [199].

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Charles's Motion to Stay Self-Reporting Date [198] is **denied**.

IT IS THEREFORE ORDERED AND ADJUDGED that Linda's Motion to Stay Self-Reporting Date [199] is **denied**.

SO ORDERED AND ADJUDGED this the 1st day of May, 2017.

        s/Keith Starrett
        KEITH STARRETT
        UNITED STATES DISTRICT JUDGE

---

[25] Prior to the trial, Defendants attempted to delay the proceedings by delaying hiring attorneys for Linda after her original attorneys were disqualified.  After being found guilty, Defendants attempted to delay sentencing through Charles's fruitless efforts to cooperate.  During sentencing itself, in his allocution, Charles persisted in his attempts to delay, calling for a *Garcia* hearing and alleging arguments and evidence that were never brought before the Court despite being known to Defendants throughout the proceedings.  (*See* Sentencing Transcript [207] at pp. 77-89.)