IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


UNITED STATES OF AMERICA


VERSUS                                          CRIMINAL NO. 2:16-cr7-KS-MTP


CHARLES BOLTON and
LINDA BOLTON



GOVERNMENT'S OPPOSITION TO CHARLES AND LINDA BOLTON'S
MOTIONS FOR A NEW TRIAL AND TO VACATE CONVICTION AND SENTENCE,
REC DOCS 175, 177, 178 AND 181


I.      BACKGROUND

On March 22, 2016, a federal grand jury in the Southern District of Mississippi returned a

ten-count indictment charging Charles and Linda Bolton with attempted tax evasion (Counts 1-5)

and filing false tax returns for the same tax years (Counts 6-10) for tax years 2009-2013 by,

among other things:

> (1) cashing tens of thousands of dollars in checks purportedly
> issued in payment for liquor, wine and catering services to prevent
> those payments from being recorded on their business bank
> statements; (2) providing deceptive records to their tax return
> preparer; and (3) making false statements to their tax returns
> preparer that some payments for goods and services were loans.

Rec. Doc. 1.

1

Shortly afterward, Joe Sam Owen entered an appearance as counsel of record on behalf of Charles Bolton. Rec. Doc. 3.[1] Paul "Bud" Holmes represented Linda Bolton at her initial appearance. Rec. Doc. 3 (text only minute entry). In late June 2016, less than four weeks before the later-rescheduled July trial date, a second attorney, James Dukes, also enrolled to represent Linda Bolton. Rec. Doc. 21.

While reviewing case documents and preparing for trial, the government observed that several of the checks claimed as loans involved Holmes and Dukes and moved to disqualify them as counsel for Linda Bolton because they were potential witnesses, which the Court granted. Rec. Doc. 36. Linda Bolton retained Lisa Ross and Carlos Tanner who sought a continuance on her behalf, Rec. Doc. 40, 41, 42, which the Court granted, scheduling a trial date for September 2016. Rec. Doc. 45. Linda Bolton also retained Robert McDuff prior to trial. Rec. Doc. 58.

The Boltons' case was tried before a jury from September 13-15, 2016. *See United States v. Bolton, et al,* 16-7 (Text-only minute entries, dated September 13-15, 2016). The government presented evidence that, to avoid liability for income taxes, the Boltons reported numerous deposits as "loans" rather than "income" to the Boltons' Sports 22 Restaurant and Hall Avenue Package Store. The deposits were mostly in the form of checks from Manheim Mississippi Auto Action, the Mississippi Air National Guard, a Sports 22 Restaurant customer for $8.75, Linda Bolton's former attorneys Holmes and Dukes, and John Lee, whose relationship with Charles Bolton is one of the issues raised herein. *See* Sept. 14, 2016 Tr. (testimony of CPA Renee Moore, a tax preparer for the Boltons, and of IRS Special Agent Bradley Luker); Rec. Doc. 149.

---

[1] Owen was assisted in his representation of Charles Bolton by another member of his firm, Ben Galloway. Rec. Doc. 20.

On the third day of trial, the jury returned a not-guilty verdict as to both defendants on Count 1, a guilty verdict as to Charles Bolton on Counts 2 through 5, and a guilty verdict as to both defendants on Counts 6 through 10. Rec. Doc. 109. The jury failed to reach a verdict on Counts 2 through 5 as to Linda Bolton, and the Court declared a mistrial on those counts. Rec. Doc. 109.

Shortly afterward, the Boltons filed motions for acquittal or new trial based on some of the arguments raised here, Rec. Doc. 118, 119, which the Court denied with reasons. Rec. Doc. 127. Joined by Charles Bolton, Linda Bolton then filed a motion for new trial based on what she characterized as new information that violated the government's disclosure obligations under *Brady*, an issue also raised here, which this Court also denied with reasons. Rec. Doc. 128, 145.

A few days before sentencing, Charles Bolton sought to employ a new attorney who accompanied him to the Boltons' sentencing hearing on March 17, 2017. *See* CB-Exs. at 7-47 (transcription of in-chambers conference concerning Bolton's sentencing counsel). The Court found the proposed new counsel, an out-of-state attorney, had not moved for *pro hac vice* admission or to enroll in the case and thus could not represent Bolton at sentencing. CB-Exs. at 9-11, 46-47. The Court gave the Boltons time to discuss with proposed counsel and Linda Bolton's attorney whether they wanted Owen to proceed with the representation of Charles Bolton at sentencing. CB-Exs. at 46-47.

Owen represented Charles Bolton at sentencing and raised objections to recommendations in the Presentence Investigation Report. *See* CB-Exs. at 50-52 (sentencing transcript). Among others, the Boltons objected to the PSR's inclusion, as relevant conduct, their failure to pay income taxes arising out of theft of food from the prison that Charles Bolton supervised. CB-Exs. at 52-53. The Court overruled the objection, stressing that the theft of food

was not relevant conduct; rather it was the failure to pay taxes on the food as income. CB-Exs. at 52-56. In assessing the case, the Court observed, "It's the clearest case of tax fraud that could be scripted. You get income, you cashed the checks, you put it in your pocket and don't declare it as income." CB-Exs. at 53.

The Court adopted the PSR's calculated guideline range of 27 to 33 months for each of the Boltons' counts of conviction. CB-Exs. at 59. The Court sentenced Charles Bolton to a term of imprisonment of 33 months on Counts 2 through 5 and a consecutive 12-month sentence for Counts 6 through 10, for a total sentence of 45 months, an upward variance. Rec. Doc. 165. The Court sentenced Linda Bolton to 30 months, the middle of her advisory guideline range. Rec. Doc. 166.

The Court allowed both defendants to self-surrender, as notified by the United States Marshal, but no later than 60 days from the date of sentencing. Rec. Doc. 165 (Charles Bolton); Rec. Doc. 166 (Linda Bolton).

## II.  LAW AND ARGUMENT

### A. Standard of Review

#### 1.  Motion for a new Trial, Rule 33(a)

The district court may grant a new trial if the interest of justice so requires. Rule 33(a). The Court should exercise a motion for new trial with caution, and the power to grant a new trial should be invoked only in exceptional cases. *See United States v. Robertson*, 110 F.3d 1113, 1120 (5th Cir.1997). Only where a court finds that a miscarriage of justice may have occurred at trial should a new trial be granted in the interests of justice. *Id.*

### 2.   Time to File a Motion New Trial, Rule 33(b)

A motion for new trial based on "newly discovered evidence" may be filed any time within "three years after the verdict or finding of guilt." Fed.R.Crim.P. 33(b)(1). Any motion for a new trial "grounded on any reason other than newly discovered evidence" must be filed within 14 days after the verdict or finding of guilty. Fed.R.Crim.P. 33(b)(2). In determining whether to grant the motion, the district court must carefully "weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (citing *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)). However, the court must not entirely usurp the jury's function. *Taragno*, 396 F.3d at 672. The power to grant a new trial under Rule 33 should be exercised infrequently by district courts, unless warranted by "exceptional" circumstances. *Id.*

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL IS NOT NEWLY DISCOVERED EVIDENCE.

In order to prevail on a motion for a new trial under Rule 33(b), the defendant has the burden of showing that:

> (1) The evidence is newly discovered ***and*** was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.

*United States v. Reedy*, 304 F.3d 358, 372 (5th Cir. 2001) (emphasis added). The defendant must establish all five prerequisites in order to prevail. *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001). Any motion for a new trial based on any grounds other than newly discovered evidence must be filed within 14 days after the jury verdict. Fed. R. Crim. P. 33(b)(2). When "the facts alleged in support of a motion for a new trial were within the defendant's knowledge at

5

the time of trial," the motion may not be considered as one in the nature of newly discovered evidence for purposes of Rule 33. *United States v. Ellison*, 557 F.2d 128, 133 (7th Cir. 1977). When a motion is filed after the 14-day time limit that is not based on newly discovered evidence, the district court has no jurisdiction to hear the claim. *Villarreal*, 324 F.3d at 327 (finding the district court had no jurisdiction to rule on untimely new trial claim).

The Fifth Circuit has held that claims for ineffective assistance of counsel do not constitute newly discovered evidence under Rule 33. *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003); *see also United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997) (finding that a Rule 33 motion, filed more than seven days[2] after the verdict, and premised on "newly discovered evidence" is an improper vehicle for raising a claim of ineffective assistance of counsel); *United States v. Ugalde*, 861 F.2d 802, 806 (5th Cir. 1988) (finding that facts about counsel's performance which the defendant knew, but did not appreciate as legally significant, are not 'newly discovered' within the meaning of Rule 33). The Fifth Circuit has also held that even unknown facts about counsel's performance cannot be considered newly discovered evidence. *Ugalde*, 861 F.2d at 810. The remedy for ineffective assistance of council should be sought in a collateral challenge by a federal *habeas* petition as allowed by 28 U.S.C. § 2255, not under Rule 33. *Ugalde*, 861 F.2d at 809. That mechanism, rather than a new trial, best accommodates the interests in finality and fairness with respect to ineffective assistance of counsel claims. *Id*.

The Boltons have the burden of establishing they have meet the five pronged test for a new trial, and have not demonstrated that ineffective assistance of counsel constituted newly

---

[2] The standard is now 14 days. *See* Fed. R. Crim. P. 29(c)(1), Fed.R.Crim.P. 33(b)(2).

discovered evidence to warrant a longer than 14-day time to file. *See Villareal*, 324 F.3d at 322. The Boltons enumerate several reasons that they believe defense counsel was deficient, none of which entitle them to a new trial. First, the Boltons claim Charles Bolton's attorney, Joe Sam Owen, and Linda Bolton's attorney, Robert McDuff had conflicts of interest. *See* CB Motion 177 at 1. Yet, this conflict of interest did not exist.[3] Further, even if it did, it is an ineffectiveness claim masking as a conflict of interest and, Fifth Circuit case law is clear, a claim for ineffective assistance of counsel is not "newly discovered evidence" under Rule 33. *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003), *United States v. Ugalde*, 861 F.2d 802, 810 (5th Cir. 1988), *United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997).

Next, the defendants offer affidavits purporting to show the errors defense counsel made by not calling Carl Nicholson, Phil Hull, Maggie Hancock, George Clark, and Sheriff McGee. Again, these affidavits show that the Boltons are really raising an ineffective assistance of counsel claim. This claim is not appropriate in a motion for a new trial, and is untimely under Rule 33. Further, each affidavit also fails the test for a new trial because the information proffered would have only served to impeach Agent Luker's testimony, would have been cumulative, or addresses a matter that should not be raised in a motion for a new trial. *Reedy*, 304 F.3d at 372. Cumulative or impeaching evidence, such as affidavits gathered after trial, are also not "newly discovered evidence." *United States v. Wall*, 389 F.3d 457, 469-70 (5th Cir. 2004); *Villarreal*, 324 F.3d at 326. The Carl Nicholson affidavit purports to be evidence the defense should have offered to impeach Agent Luker's testimony that checks to Sports 22 and

---

[3] The government is unable to fully respond to the conflict argument, but even based on the affidavits offered by the defendants, this conflict either did not exist or would have been within the defendant's knowledge upon an exercise of due diligence. Thus, the defendant's self-serving claim that there was a conflict of interest is untimely under Rule 33.

Hall Package Liquor were income. (*See* CB-Motion 177 at 7). The Phil Hull affidavit purports to be evidence the defense should have offered to impeach Agent Luker by casting doubt on the tax deficiencies. (*See* CB-Motion 177 at 16). The Maggie Hancock affidavit purports to be evidence the defense should have offered to impeach Agent Luker's testimony that the John Lee checks were not income. (*See* CB-Motion 177 at 19). The George Clark affidavit could only be offered to critique Mr. Owen's trial tactics. (*See* CB-Motion 177 at 4). The Sheriff Billy McGee affidavit purports to be evidence the defense could have offered at a sentencing hearing to dispute the probation officer's findings regarding the food theft, which is not a proper reason to request a new trial. (*See* CB-Motion 177 at 43-44).

The Boltons also allege defense counsel were ineffective for not calling specific witnesses. *Ugalde*, 861 F.2d at 807. These claims include the failure to call an expert on financial crime, Sports 22 cook Maggie Hancock, CPA Carl Nicholson, and John Lee. These points fail meet the threshold for a new trial for the same reasons cited above. The argument raises alleged deficiencies in counsel's performance, and were facts known to the Boltons at the time of trial. *See Reedy*, 304 at 372.

Charles Bolton raises other claims as to why Mr. Owen rendered ineffective assistance of counsel, yet none support an ineffective assistance of counsel claim or qualify as "new evidence." Bolton alleges Mr. Owen was deficient because he: (1) failed to research the tax laws, decided not to hire an expert to refute the government's tax calculations (*See* CB-Motion 177 at 68); (2) refused to allow Bolton to testify on his own behalf (*See* CB-Motion 177 at 60-61); (3) did not present evidence that the alcohol purchase records from the state of Mississippi did not match the amount of income the government said was from liquor sales (*See* CB-Motion 177 at 65); (4) failed to oppose information in the government's summary charts regarding tax

deficiency calculations, and not having received or read the charts in time (*See* CB-Motion 177 at 26, 28); (5) failed to raise a *Brady* objection to the summary charts and photographs showing Hall Avenue Package Store liquor in John Lee's office (*See* CB-Motion 177 at 25, 65); (6) and failed to mitigate the sentencing recommendation (*See* CB-Motion 177 at 36). Similarly, Linda Bolton also claims her attorney, Mr. McDuff, suffered from an attorney to attorney conflict of interest due to an "adversarial role" with Mr. Owen. (*See* LB-Motion 178 at 4). Again, all of these ineffective assistance of counsel claims should be dismissed because, as explained above, claims of ineffective assistance of counsel are not "newly discovered evidence" under Rule 33. *See, e.g.*, *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003), *United States v. Ugalde*, 861 F.2d 802, 810 (5th Cir. 1988), *United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997).

## IV.   THE BOLTON'S ALLEGED CONFLICT OF INTEREST CLAIM RELATING TO MR. OWEN IS AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

The Boltons also claim their attorneys were ineffective in not calling John Lee to the stand, and that this was due to a conflict of interest created by Lee paying a disputed amount of money to Mr. Owen for Charles Bolton's legal fees in an unrelated case in 2014. (*See* CB-Motion 177 at 11). The government does not have access to all the facts to contest this allegation and has asked this Court to reconsider sealing the response of the firm Owen, Gallaway, Myers. Rec. Doc. 274. However, the claim fails regardless of any disputed facts because it is untimely under *Reedy* and is actually in ineffective assistance of counsel claim that should be pursued in a 2255 motion. Charles Bolton cannot claim this evidence was unknown to him, and even if it was unknown it still fails because it was an easily discoverable fact. *Reedy*, 304 F.3d at 372. Failing to call a witness is not newly discovered evidence. *Ugalde*. 861 F.2d at 807. Furthermore, people other than the client are allowed to pay legal fees for the client if the client consents. *See* M.S. RPC R. 1.8(f). Charles Bolton cannot seriously claim that he did not know who paid his own

legal fees. That is a major stretch, and even if it were true, the point is moot because this conflict of interest claim does not satisfy the *Reedy* test, as Charles Bolton could have easily inquired as to who was paying his own legal fees. *Reedy*, 304 F.3d at 372. He has not alleged that this was a secret from him or purposely kept from him.

*Villarreal* is instructive. In that case, the defendant specifically raised a conflict of interest claim on a Rule 33 motion. *United States v. Villarreal*, 324 F.3d 319, 326. The conflict was based on his attorney previously working in the District Attorney's Office at the time when the defendant was prosecuted for a different charge. *Id.* at 327-28. The court held there was no jurisdiction to hear this conflict of interest claim on a Rule 33 motion because ineffective assistance of counsel claims are not considered newly discovered evidence. *Id.* at 326. This is the same situation we have here. The purported conflict of Mr. Owen and any conflict involving Mr. McDuff do not give rise to a new trial claim. *Id.*

It should also be noted that Carl Nicholson's own affidavit defeats and argument he has that Lee's alleged payment of his attorneys fees would actually be "in conflict" with Charles Bolton's interests. The Carl Nicholson affidavit demonstrates that Lee wanted to help Charles Bolton and stated that John Lee told Nicholson "that those checks were not income to Charles Bolton and he was not going to let Charles get hurt by his checks to Charles." *See* CB-Motion 177, Exhibit 3, pg. 2. That does not sound like the statement of someone whose position is to protect himself at the expense of Bolton. Nor does it show that Lee would put pressure on Mr. Owen to represent his interests at the expense of Bolton. This statement would not have been able to be used at trial anyway because it is hearsay.

The case law the Boltons rely on can be readily distinguished. The Boltons cite *Perillo v. Johnson* to support their conflict of interest arguments. However, unlike the posture of this case,

*Perillo* was properly brought as a 28 U.S.C. § 2254 petition for habeas corpus relief. 205 F.3d 775, 780 (5th Cir. 2000). More importantly, in *Perillo*, the court of appeals determined there was an actual conflict of interest based on concurrent representation of two clients with competing interests. *Id.* at 806. Here, there is no conflict of interest based on multiple representation so the *Cuyler* standard, cited by the defendants, does not apply. *See Beets v. Scott*, 65 F.3d 1258, 1270-71 (5th Cir. 1995) (*Cuyler* only applies when there is multiple representation and actual conflict between those representations). Only after showing an actual conflict due to multiple representation can a claimant show an adverse effect by "demonstrating that there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict. *Perillo*, 205 F.3d at 807.  The Boltons' have not shown an actual conflict of multiple representation so they cannot claim their attorney's adversely affected the outcome by not pursuing a "plausible alternative defense strategy."

The Boltons cite *United States v. Smith* to say that ineffective assistance of counsel claims are governed by the same standard whether in a motion for a new trial or habeas petition. 62 F.3d 641, 649 (4th Cir. 1995). While this is true, it seems the Boltons did not read the page before that citation, where the court cites *Ugalde* and says ineffective assistance of counsel claims are not newly discovered evidence under Rule 33. *Id.* at 648.  That ineffective assistance claim was brought too late, as it is here. *Id.*

Linda Bolton's conflict of interest claims are even more farfetched than her husband's. Her original attorneys were removed from the case for good cause after consideration by the Court. A lawyer cannot be a witness in a case he is trying. M.S. RPC R. 3.7. Having an attorney excused because they were a potential witness does not entitle Linda Bolton to make an ineffective assistance of counsel claim. Further, Linda Bolton cites no authority to support her

claim of attorney-attorney conflict of interest which allegedly rendered her counsel, Mr. McDuff ineffective. She has not shown an actual conflict, at best she is pointing to a speculative, hypothetical or potential conflict. *United States v. Hernandez*, 690 F.3d 613, 619 (5th Cir. 2012) (citations omitted). She has not presented any evidence of an "adversarial role" between the two attorneys or how that supposed "adversarial role" prejudiced her right to counsel of choice.  Any claims of ineffectiveness related to Mr. McDuff fail for the same reasons as Charles Bolton's ineffective claims fail. They do not satisfy the *Reedy* test for "newly discovered evidence." *United States v. Reedy*, 304 F.3d 358, 372 (5th Cir. 2001). The claims were either known to her, or could have been discovered with diligence. Ineffective assistance of counsel claims are not "newly discovered evidence." *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003), *United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997). Specifically, her claim about failing to call Carl Nicholson is not newly discovered evidence under *Ugalde*. 861 F.2d at 807 (failing to call a witness is not newly discovered evidence). Linda Bolton's reliance on *Perillo* is also faulty because she has not shown an actual conflict of multiple representation.

Linda Bolton cites no legal or factual support for her claim that the media reporting on the disqualification of her original counsel violated her constitutional rights under the Sixth, Fourteenth and Fifth Amendments. She does not even attempt to show how this disclosure prejudiced her in any way. There is no evidence of this influencing any juror or anyone involved in the case. All she does is make a conclusory statement that her constitutional rights were violated. She has not pointed to any "irrevocable" damage that was done.

In sum, the Boltons have not shown any newly discovered evidence because ineffective assistance of counsel claims are not newly discovered evidence. *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003), *United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997). This

motion should be denied in its entirety because none of the claims are based on newly discovered

evidence, and the motion was not filed within 14 days of the verdict. Fed.R.Crim.P. 33(b)(2). If

this alleged conflict exists, Charles Bolton has not proven it was unknown to himself at the time

of trial, and has failed to show the failure to detect the evidence was not due to a lack of

diligence by the defendant. *Reedy*, 304 F.3d at 372. Furthermore, none of the "new evidence"

would probably produce and acquittal. *Id.* The Court does not have jurisdiction to hear these

claims because there is no "newly discovered evidence." *United States v. Villarreal*, 324 F.3d

319, 326 (5th Cir. 2003). The Fifth Circuit has warned about this type of claim under Rule 33.  In

*Ugalde*, the court stated, if we were to allow this type of claim to proceed,

> [d]efendants could easily search out some fact about their lawyer's pre-trial
> preparation, and make that fact the basis for an otherwise untimely motion for
> new trial. Such motions would rarely succeed, but they could allow defendants to
> "delay ... the enforcement of just sentences," a consequence against which Justice
> Black warned us forty years ago.

861 F.2d at 809.  The Bolton's motion is exactly the type of motion the court was

warning about, and his motion for a new trial under Rule 33 should be denied.

## V.    THE COURT ALREADY RULED THERE WAS NO BRADY VIOLATION.

The Boltons cannot prevail on a *Brady* claim in the instant motion for a new trial where

the Court already ruled there was no *Brady* violation in this case. *United States v. Bolton*, No.

2:16-CR-7-KS-MTP, 2016 WL 7335650, at *3 (S.D. Miss. Dec. 16, 2016). The successive

urging of their failed *Brady* motion underscores the fact that these motions belong in a direct

appeal or collateral challenge rather than in a motion for new trial. To establish a *Brady*

violation, a defendant must show: "(1) the evidence at issue was favorable to the accused, either

because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution;

(3) the evidence was material." *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). The

Supreme Court stated evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). A "reasonable probability" of a different result is shown when the suppression "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Bagley*, 473 U.S. at 678). The likelihood of a different result must be substantial, not just conceivable. *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The evidence must not have been discoverable through the defendant's due diligence in order to be considered "suppressed." *Brown*, 650 F.3d at 588.

In *Brown*, an Enron executive convicted of perjury and obstruction of justice raised a *Brady* claim stating that the prosecutors did not turn over FBI notes from an interview with a witness. *Id.* at 589. The issue was whether there was anything favorable to the executive in the notes. *Id.* The executive argued that the notes were favorable because they were inconsistent with the witnesses other statements regarding if a "promise" was made or not. *Id.* The court held the notes were not favorable to him because, if the notes were read "in context" rather than just the sentences the defendant "cherry pick[ed]," the notes corroborated the government's position. *Id.* at 589-90.

Here, as in *Brown*, the Boltons want this Court to cherry-pick phrases from the FBI 302 and use them out of context to assert that the failure to turn over a report of an FBI interview with John Lee was a *Brady* violation. However, failure to disclose the report was not a *Brady* violation because the statement was not favorable and was not material. *See United States v. Bolton*, No. 2:16-CR-7-KS-MTP, 2016 WL 7335650, at *3 (S.D. Miss. Dec. 16, 2016), *See also Dvorin*, 817 F.3d at 450. Furthermore, the report was not suppressed because the Boltons knew

this interview took place so the evidence was easily discoverable if they had exercised due diligence. *Bolton*, 2016 WL 7335650, at *3; *See also Brown*, 650 F.3d at 588.

The Boltons also claim that the report of this interview conflicts with Agent Luker's testimony. This could only be true if one were to misrepresent John Lee's statements from the FBI 302 to support the Boltons' position that the checks were actually gifts. Courts will not allow a defendant to try to put a misleading spin on a statement in order to make create a *Brady* violation. *Brown*, 650 F.3d at 591. As the Court previously noted, the FBI agent's report of John Lee's interview is not impeaching because Lee's statements did not go to the truth of Agent Luker's testimony or his credibility. *United States v. Bolton*, 2016 WL 7335650, at *3.  Also, the FBI report would have been considered hearsay. *Id.*

The FBI report was not suppressed because both sides knew the interview had taken place and the substance of the statement. *Bolton*, 2016 WL 7335650, at *3. Thus, the report could have been discovered through due diligence. *Id*; *Brown*, 650 F.3d at 588. Additionally, it was not subject to Rule 16 disclosure because it is constitutes "reports, memoranda, or other internal government documents made by ... [a] government agent in connection with investigating or prosecuting the case" not subject to disclosure." *Bolton*, 2016 WL 7335650, at *3; *see also* Fed. R. Crim. P. 16(a)(2). Neither Lee nor the agent who wrote the report testified. Unless words are added to the report or words contained in the report do not convey their ordinary meaning, no *Brad*y issue exists.

The non-disclosure of the report could also not have supported a *Brad*y violation because the report is not material. *Bolton*, 2016 WL 7335650, at * 2. The Court stated, in denying the first motion for new trial, that the report is not material because there is sufficient evidence in the record that would support the "convictions even if the John Lee checks were excluded entirely."

*Bolton*, 2016 WL 7335650, at *2. The evidence of the Manheim and Mississippi National Guard checks were enough to support the conviction. *United States v. Bolton*, No. 2:16-CR-7-KS-MTP, 2016 WL 6581306, at *2 (S.D. Miss. Nov. 4, 2016). Finally, the evidence was not material because both sides stipulated that John Lee would exercise his Fifth Amendment privilege if called to testify. *See* Rec. Doc. 149, at 311, ll. 3-5. This is the same situation as in *Brown* where the court held the McMahon notes at issue were not material because the parties stipulated McMahon would take the Fifth if called to testify. *Brown*, 650 F.3d at 592. By implication, if both parties were willing to stipulate to this fact, the content of the testimony could not be material.

In regards to the Boltons' other *Brady* claims – the alleged late disclosures of photographs and summary charts – these claims do not meet the elements required to establish a *Brady* violation. Neither the photos nor the charts were favorable, suppressed, or material. *Dvorin*, 817 F.3d at 450.  The parties stipulated to the office photographs. *See* Government Exhibit No. G-87, Bates No. 001612. The parties stipulated to admissibility of nearly every page of documentary evidence in this case, so the defendants cannot come back and now alleged a *Brady* violation based upon documents they agreed were admissible. The charts were disclosed to opposing counsel pretrial because new checks continued to be discovered, changing the final calculations on the charts. When offered into evidence, the defendants never objected to the introduction of the charts or complained that they were late or not produced. In fact, they stipulated their admissibility. *See* Government Exhibit No. G-13, Bates No. 000789 (National Guard Summary Chart); *see* Government Exhibit No. G-72 (2009-2013 tax computations); *see* Government Exhibit No. G-73 (2009-2013 John Lee cashed checks). The record contains ten

additional charts the defendants stipulated to. *See* Government Exhibit No. G-74-G-76, G-78-G-

94. The Boltons cannot make a *Brady* claim regarding evidence they stipulated to.

## VI.     THERE IS NO BASIS FOR THE CLAIM THAT A DEPARTURE FROM DOJ GUIDELENES VACATES A CONVICTION.

The Boltons claim that their attorneys were ineffective because they did not argue that the

tax charges violated IRS and DOJ procedures. *See* CB-Motion 177 at 44-45, LB Motion 178 at

34. Because this in an ineffective assistance of counsel claim, it cannot meet the definition of

"newly discovered evidence" under Rule 33(b) and is untimely, if filed as a motion for a new

trial. *Reedy*, 304 F.3d at 372; Rule 33(b). As discussed in section III *supra*, an ineffective

assistance claim is properly presented as a 2255 motion and should not be litigated here.

Nevertheless, the charges in this case were, in fact, approved by the tax division. Even if this

allegation about violating procedures was considered on its merits, it would fail because any

alleged DOJ procedural violation does not create any procedural or substantive rights for

defendants. USAM § 1–1.100 (The Manual provides only internal Department of Justice

guidance; *see also United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009) ("The USAM itself

makes plain that it provides only internal Department of Justice guidance [and] is not intended

to, does not, and may not be relied upon, to create any rights"); *United States v. Jones*, No.

CRIM.A. 10-CR-60, 2011 WL 320917, at *4 (M.D. La. Jan. 28, 2011) (stating it is well-

established that the Department of Justice guidelines and policies do not create enforceable rights

for criminal defendants).

The Fifth Circuit has held that failure of the government to follow DOJ policy does not

deprive a defendant of due process. *Cooks*, 589 F.3d at 184. In *Cooks*, a defendant asserted that

he was deprived of due process by the prosecutors' failure to consult with the DOJ's Asset

Forfeiture and Money Laundering Section before bringing charges. *Id.* at 184.  He claimed the

prosecutors were required to do so by DOJ policy set forth in the United States Attorneys Manual (USAM). *Id.* The court noted the defendant was wrong about his claim that the prosecutors violated DOJ policy. *Id.* Even if he was correct that a policy was violated, the court held his claim would still fail because the USAM does not create procedural or substantive rights. *Id.* Similarly, in *United States v. Small*, a defendant who was convicted of tax evasion and failing to file tax returns under 26 U.S.C. § 7201 and 26 U.S.C. § 7203 argued that his conviction should be vacated because the prosecution failed to obtain approval from the Attorney General before prosecuting the case. 487 F. App'x 302, 303 (7th Cir. 2012). The Seventh Circuit assumed he was referring to the USAM and 28 C.F.R. § 0.70. *Id.* The court held that the defendant had not shown the government failed to secure proper approval. *Id.* Further, the court noted the USAM does not grant substantive rights. *Id.* Here, the U.S. Attorney's Office obtained approval from the tax division to bring tax charges against the Boltons. Therefore, Court should deny the Boltons' new trial claim based on the argument that proper approvals were not followed because (1) the claim is not based on newly discovered evidence, (2) the Boltons have not attempted to make any showing that this potential argument could not have been raised during trial with some due diligence on their part, and (3) this argument is an ineffective assistance claim that should be brought as at 2255 claim.

## VII.   PRESENTING JOHN LEE'S BUSINESS LEDGER WAS NOT A SIXTH AMENDMENT VIOLATION.

The Boltons' allegation that their Sixth Amendment rights were violated because they were unable to confront John Lee, is improperly raised in a motion for a new trial and is without merit. As the Court previously ruled, the Boltons would have still been convicted without any evidence related to John Lee based on the Manheim and Mississippi National Guard checks.

*United States v. Bolton*, No. 2:16-CR-7-KS-MTP, 2016 WL 6581306, at *2, (S.D. Miss. Nov. 4, 2016).

Even if the Sixth Amendment violation was properly before the Court, the parties stipulated that John Lee would not take the stand, so there was no need to call him. *See* Rec. Doc. 149, pg 311, lines 3-5. Only John Lee's business records were used at trial and these records are not a "statement" or "testimony" subject to cross-examination under *Crawford v. Washington*. As the Boltons note in their motions, the government did not call John Lee to testify and only his business ledger was used as evidence. *See* CB-Motion 177 at 50, LB-Motion 178 at 39. The business ledger is clearly not "testimony" or "testimonial" under any definition because it is not a statement given under circumstances which would make John Lee reasonably believe it would be used at a later trial. *Id.* at 52. It was his personal ledger. In *Crawford* the Court specifically noted that business records are not testimonial. *Id.* at 56. Thus, there is no valid Sixth Amendment claim related to the business ledger.

The Boltons also make a vague allusion to the statement of John Lee, as repeated by Agent Luker, being a Sixth Amendment violation. They have not provided any argument that this statement was testimonial and thus subject to *Crawford*. John Lee's statement was not testimonial as it was not "a solemn declaration . . . made for the purpose of establishing or proving some fact." *Id.* at 51. There is no argument made that John Lee had an objective belief his statement would be used in a trial involving the Boltons. Additionally, the Boltons did object to the introduction of the statement at trial. *Bolton*, 2016 WL 6581306 at *2 n.1. Even if the statement to Agent Luker is considered testimonial, it does not make a difference in the result at trial, and does not entitle the Boltons to a new trial. *Id.* at *2.

**VIII.  SENTENCING ISSUES DO NOT ENTITLE A DEFENDANT TO A NEW TRIAL.**

19

The Boltons' motions for a new trial are not the proper vehicle to challenge their sentences. *See, e.g., United States v. Bell*, 257 F. App'x 801, 802 (5th Cir. 2007); *see also United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (motion challenging sentencing is not properly characterized as one for a new trial). The Court properly calculated the Boltons' sentences, and even if not, sentencing issues do not entitle a defendant to an entirely *new trial*. Title 18 United States Code Section 3661 states, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. A district court has wide discretion to decide what evidence to consider or credit at sentencing. *United States v. Cantu–Ramirez,* 669 F.3d 619, 628 (5th Cir. 2012). Sentencing courts are free to "consider any relevant evidence, including uncorroborated hearsay evidence regardless of its admissibility under the rules of evidence applicable at trial, provided the information has sufficient indicia of reliability." *United States v. Andaverde–Tinoco,* 741 F.3d 509, 525 (5th Cir. 2013). When a defendant successfully challenges the sentencing selection on appeal, the case is remanded for a new sentence, and the appellate court does not order a new trial. *See United States v. Taylor*, 933 F.2d 307, 309 (5th Cir. 1991) (case remanded for resentencing, not new trial); *see also United States v. Scroggins*, 485 F.3d 824, 828 (5th Cir. 2007) (same), *United States v. Adair*, 436 F.3d 520, 522 (5th Cir. 2006) (same).

## IX.   IT IS PERMISSIBLE TO BRING VIOLATIONS OF SECTIONS 7201 AND 7206 AT THE SAME TIME.

The indictment charges the Boltons with violating Title 26 United States Code, sections 7201 and 7206(1). The Boltons argue that these charges are duplicitous and thus the indictment should be dismissed. (*See* CB-Motion 177 at 45, LB-Motion 178 at 35). Courts have held that a defendant can be charged with violating sections 7201 and 7206(1), and these charges are not

duplicative. In *Hensley v. U.S.*, the defendant was convicted of violating both sections 7201 and

7206(1) for creating false invoices to cover payments to friends and relatives. *Hensley,* 406 F.2d

481, 482-83 (10th Cir. 1968). The defendant challenged his conviction under sections 7201 and

7206(1), and the Tenth Circuit held they are not duplicitous. *Id.* at 486. The court noted that

because "both statutes may be violated by the act of filing a single return there are no overtones

of double jeopardy when prosecuted by a single indictment." *Id.* The court stated, "each of these

sections might be violated without a violation of the other." Therefore, the court concluded,

sections 7201 and 7206(1) are not duplicitous. *Id.*

Section 7201 and 7206(1) were likewise held not to be duplicitous in *United States v.*

*Bender*. The court held,

> "A defendant can be guilty of violating section 7201 without violating section
> 7206(1) and vice versa because the elements of the offenses are not identical.
> However, in any particular case, section 7206(1) may not be a lesser included
> offense within section 7201 because, on the proof offered, the factual elements
> may be identical."

*United States v. Bender*, 606 F.2d 897, 898 (9th Cir. 1979). This ruling was cited with approval

by the Fifth Circuit when a district court mistakenly dismissed a 7201 charge in a case where the

defendant was charged with violating both 7201 and 7206(1). *See United States v. Barrilleaux*,

746 F.2d 254, 255 (5th Cir. 1984). The district court rejected defendant's argument that the

section 7206(1) charge should have been dismissed due to collateral estoppel when the section

7201 charge was dismissed, and the Fifth Circuit agreed. *Id.* The Fifth Circuit also agreed that

the charges are not duplicitous. *Id.* Indeed, numerous defendants in the Fifth Circuit have been

convicted of violating sections 7201 and 7206(1). *See United States v. Bishop*, 264 F.3d 535, 543

(5th Cir. 2001) (Defendant convicted of violating 7201 and 7206(1)); *United States v. Burrell*,

505 F.2d 904, 906 (5th Cir. 1974) (same), *United States v. Robinson*, 974 F.2d 575, 577 (5th Cir.

1992) (same); *United States v. Fendley*, 522 F.2d 181, 183 (5th Cir. 1975) (same).

The Boltons also repeatedly claim there was no tax deficiency and thus there can be no separate charge for filing a false tax return. This is not true. The government showed a tax deficiency for every year from 2009 to 2013. *See* Government Exhibit G-72. There were hundreds of checks at issue in this case. The Boltons were not charged with a violation of 7201 and 7206(1) based on the same one check.[4] An overwhelming amount of evidence shows both a willful intent to evade taxes and that they also filed false tax returns. Based on some of the checks the Boltons were charged with tax evasion, and based on other checks they were charged with filing a false return. There are hundreds of checks, and each one could support its own charge of either 7201 or 7206(1). The charges are not based on the same exact checks. They are supported by different checks, thus the charges cannot be considered not duplicitous.

## X.   THE EXISTENCE OF CHECKS MADE PAYABLE TO A BUSINESS COMBINED WITH OTHER EVIDENCE WAS SUFFICIENT TO PROVE INCOME.

The Boltons claim the government did not prove the checks from John Lee were taxable income. This sufficiency of the evidence claim is untimely under Rule 29(c) and Rule 33(b). Fed. R. Crim. P. 29(c) and Fed.R.Crim.P. 33(b)(2). Additionally, the claim is not a ground for a new trial as it is not newly discovered evidence. *United States v. Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003). Even if it was grounds for a new trial, the claim is without merit, as the government presented a substantial amount of evidence to prove the checks were taxable income. The "government is not required to negate all possible non-income sources" of the checks. *United States v. Boulet*, 577 F.2d 1165, 1168 (5th Cir. 1978).

The checks themselves were written to the Boltons businesses, Hall Package Liquor and Sports 22 Restaurant, for goods and services. The fact that the checks were claimed to be for

---

[4] Although this would still be constitutional. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[a] single act may be an offense against two statutes").

goods and services was confirmed by testimony from Agent Luker, testimony from John Lee's assistant Helen Moreland, and John Lee's own tax returns and check stubs, which stated the checks were for goods and services or office supplies. The government did not need to prove the checks were for food and beverages. A proposed jury instruction requiring the government to prove the checks were for food and alcohol was rejected twice. *United States v. Bolton*, No. 2:16-CR-7-KS-MTP, 2016 WL 6581306, at *3 (S.D. Miss. Nov. 4, 2016). The government "did not need to prove what type of taxable income the checks were, only that they were, in fact, taxable income." *Id.*

No evidence was presented that the John Lee checks were issued for anything other than goods and services. There was no evidence that the checks were gifts. *Id.* at *4. There was explicit testimony that none of the checks were gifts. *Id.* The claim that the government did not prove the John Lee checks were income is moot because there was enough evidence to convict the Boltons without the John Lee checks. *Id.* at *2. Specifically, the Boltons could have been convicted based on the Manheim and Mississippi National Guard goods and services checks alone. *Id.*

## XI.   CHARLES BOLTON IS NOT ENTITLED TO A POST-TRIAL GARCIA HEARING

Charles Bolton insists he was entitled to a hearing under *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n. 2 (1984). However, a *Garcia* hearing is only needed if there is an actual conflict of interest that a defendant wishes to waive. *See United States v. Hernandez*, 690 F.3d 613, 618-19 (5th Cir. 2012). A *Garcia* hearing is not applicable here because Charles Bolton is not claiming he wants to waive a conflict of interest. He is claiming he was adversely affected by a conflict he never tried to waive. The trial is over and the time for a *Garcia* hearing has passed.

Charles Bolton's reliance on *United States v. Pollani* and *United States. v. Taylor* is misplaced. In *Pollani* a pro se litigant, who was previously warned about trying to enroll counsel at the last minute, tried to enroll counsel a few days before *trial* and was denied. *United States v. Pollani*, 146 F.3d 269, 270-71 (5th Cir. 1998). The Fifth Circuit noted that right to counsel can be waived and that waiver can be withdrawn. *Id.* at 273 (citing *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991). The court reversed the convictions because the new counsel should have been allowed to enroll for the *trial*. *Id.* at 272. *Pollani* is about being denied counsel at *trial* after attempting to enroll counsel at the last minute. It is not similar to the situation in Charles Bolton's case, as he was represented by counsel at trial.

*Taylor* is similarly distinguishable. The defendant in *Taylor* represented himself pro se at trial, and then sought to enroll counsel for sentencing. *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991). The district court denied the motion to enroll counsel. *Id.* The court of appeals held the defendant was deprived of his right to counsel and remanded the case for resentencing. *United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991). Yet, the defendant's conviction was not overturned as Bolton claims. The case is distinguishable because it was a pro se litigant who was denied counsel at sentencing, not a defendant who voluntarily fired his attorney as part of a plan to raise an unsupported conflict of interest claim on appeal, as in Charles Bolton's case. There is no support for the argument that not being represented by counsel of your choice at sentencing entitles a defendant to a new *trial*. Bolton created this situation by firing his competent attorney right before sentencing and then trying to rely on an out of state attorney who never tried to enroll.

## XII.   BLIND STRIKES ARE CONSTITUTIONAL

The Boltons attempt to raise another ineffective assistance of counsel argument by claiming Mr. Owen and Mr. McDuff were ineffective when they failed to object to the use of

blind strikes. This ineffectiveness argument fails the test for newly discovered evidence and is

untimely. *United States v. Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003). A failure to object to

something that is known to the defendant at the time of trial is not newly discovered evidence.

*Ugalde*, 861 F.2d at 807.

The Bolton's argument that blind jury strikes are unconstitutional is completely without

merit. Supreme Court and Fifth Circuit case law clearly shows blind jury strikes are

constitutional. *See Pointer v. United States*, 151 U.S. 396, 412 (1894), *United States v. Holder*,

476 F. App'x 295, 297 (5th Cir. 2012); *United States v. Durham*, 587 F.2d 799, 801 (5th Cir.

1979); *United States v. Sarris*, 632 F.2d 1341, 1342 (5th Cir. 1980), *United States v. Taylor*, 62

F.3d 396, 396 (5th Cir. 1995). Blind jury strikes are a well-established, and legal, procedure in

the Fifth Circuit. *See United States v. Taylor*, 62 F.3d 396, 396 (5th Cir. 1995); *United States v.

Holder*, 476 F. App'x 295, 297 (5th Cir. 2012), *United States v. Durham*, 587 F.2d 799, 801 (5th

Cir. 1979); *United States v. Sarris*, 632 F.2d 1341, 1342 (5th Cir. 1980). The district court has

discretion over the method it chooses to impanel juries. *United States v. Durham*, 587 F.2d 799,

801 (5th Cir. 1979). In this case, the Court likewise had discretion to select the method it used to

impanel the jury. Choosing to do blind jury strikes is within the Court's discretion.

The Supreme Court first ruled blind strikes were legal in 1894. *Pointer v. United States*,

151 U.S. 396, 412 (1894). The Court noted that just because the defendant might strike the same

juror as the government does not change the fact that the defendant was still free to use his

strikes on whichever juror he wanted. *Id.* The Court stated no injury is done to a defendant if

they strike the same juror as the government. *Id.* More recently, the Supreme Court stated

peremptory strikes are not a constitutional right. *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988). In

*Ross*, the Court said, "peremptory challenges are a creature of statute and are not required by the

Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Id.* (citations omitted). Thus, "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.*

Likewise, the Fifth Circuit has also ruled blind strikes are constitutional. In *United States v. Holder*, a defendant challenged the use of blind strikes, arguing that the process deprived him of one of his peremptory strikes because he and the government both used one of their strikes on the same person. *United States v. Holder*, 476 F. App'x 295, 297 (5th Cir. 2012). The court held the use of blind strikes is approved in the Fifth Circuit and thus the defendant cannot argue that the district court abused its discretion. *Id.* The court in *Holder* citied to two previous Fifth Circuit decisions upholding blind strikes. In *United States v. Durham*, the defendant challenged the jury selection process and the court noted "[t]he method employed to select juries is committed to the sound discretion of the trial judge." 587 F.2d 799, 801 (5th Cir. 1979) (citing *United States v. Williams*, 447 F.2d 894, 896-97 (5th Cir. 1971)). The court held the district court did not abuse its discretion in selecting the jury procedures because the defendants were allowed to exercise all of their peremptory challenges. *Id.* In *United States v. Sarris*, the defendant argued he was denied a fair trial because the district court "required the defense and prosecution to simultaneously exercise their peremptory challenges." 632 F.2d 1341, 1342 (5th Cir. 1980). The Court held, under Fifth Circuit precedent, this method of selecting jurors was within the sound discretion of the district court. *Id.* at 1343. *See also United States v. Taylor*, 62 F.3d 396, 396 (5th Cir. 1995) (Jury selection process in criminal case where neither party disclosed to the other side whom had been struck was within the discretion of the district court).

**CONCLUSION**

For the foregoing reasons, all of the Bolton's motions should be denied in their entirety.

Respectfully submitted,
DUANE A. EVANS
ACTING UNITED STATES ATTORNEY


 s/  Fred P. Harper, Jr                               .
FRED P. HARPER, JR. (La. Bar No. 6568)
SHARAN E. LIEBERMAN
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3602
Fred.harper@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

s/  Fred P. Harper, Jr.
FRED P. HARPER, JR.
Assistant United States Attorney

27