

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
DEC 17 2018
ARTHUR JOHNSTON
BY_____ DEPUTY

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
October 26, 2018

Lyle W. Cayce
Clerk

No. 17-60502

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

CHARLES BOLTON; LINDA BOLTON,

        Defendants - Appellants

Consolidated with 17-60576

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

CHARLES BOLTON,

        Defendant - Appellant

Appeals from the United States District Court
Southern District of Mississippi

Before STEWART, Chief Judge, and WIENER and HIGGINSON, Circuit
Judges.

CARL E. STEWART, Chief Judge:

    IT IS ORDERED that our prior panel opinion, *United States v. Bolton,*

No. 17-60502
c/w No. 17-60576

No. 17-60502 c/w 17-60576, 2018 WL 5303661 (5th Cir. Oct. 23, 2018), is
WITHDRAWN and the following opinion is SUBSTITUTED therefor.

A grand jury indicted Plaintiffs-Appellants Charles Bolton ("Charles")
and his wife, Linda Bolton ("Linda"), on five counts of attempted tax evasion
and five counts of filing false tax returns. The jury convicted Charles on four
of the attempted tax evasion counts and all five counts of filing false tax
returns. The jury acquitted both Boltons on one of the attempted tax evasion
counts, failed to reach a verdict as to Linda on the remaining attempted tax
evasion counts, and convicted Linda on all five counts of filing false tax returns.

The district court sentenced Charles to 45 months of imprisonment,
imposed three years of supervised release with a special condition requiring
payment of $145,849.78 in restitution and a $10,000 fine. The district court
sentenced Linda to 30 months of imprisonment, with a one-year term of
supervised release, a $6,000 fine, and restitution of $145,849.78, owed jointly
and severally with Charles. Both Charles and Linda appeal their convictions
and sentences. We affirm the Boltons' convictions and sentences in all respects
except that we modify the district court's judgment to reflect that the
restitution owed by the Boltons is not due until their terms of supervised
release commence.

## I. Facts & Procedural History

In 1992, Charles became chief deputy sheriff of the Forrest County
Sheriff's Office ("FCSO") in Hattiesburg, Mississippi. He was terminated from
the FCSO in 2016 after he was convicted in this case. As chief deputy, he
oversaw the Forrest County Juvenile and Adult Detention Center. At that

2

No. 17-60502
c/w No. 17-60576

time, he and his wife Linda also owned and operated two businesses,[1] Hall Avenue Package Store and Sports 22 Café and Lounge.

In March 2014, the Federal Bureau of Investigation ("FBI") and the Mississippi State Auditor's Office began an investigation into whether the Boltons and others were stealing food from the FCSO's Detention Center.[2] In July 2015, the U.S. Attorney's Office for the Southern District of Mississippi received approval to recuse itself from the investigation and prosecution of Charles, and the matter was re-assigned to the U.S. Attorney's Office for the Eastern District of Louisiana. Around that time, the FBI referred several suspicious checks related to the Boltons' businesses to Internal Revenue Service ("IRS") Special Agent Bradley Luker who began a criminal tax investigation to determine whether the Boltons were guilty of violating any tax laws. Agent Luker provided information about the criminal tax investigation to Assistant United States Attorney Fred Harper of the Eastern District of Louisiana who had been assigned to Charles's case.

A federal grand jury returned a ten-count indictment in March 2016 charging the Boltons with attempted tax evasion and aiding and abetting in attempted tax evasion for the tax years 2009 through 2013, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2 (Counts 1–5), as well as filing false tax returns and aiding and abetting in the filing of false tax returns for tax years 2009 through 2013, in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2 (Counts 6–

---

[1] The Boltons' businesses were Schedule C businesses which are considered sole proprietorships. Taxes for Schedule C businesses are reported on the owner's personal income tax return.

[2] The 2014 food theft investigation did not result in charges against the Boltons in the underlying proceedings but the district court determined the incident to be relevant conduct for purposes of sentencing and its calculation of the loss and restitution amounts. *See* U.S.S.G. § 1B1.3.

3

No. 17-60502
c/w No. 17-60576

10). After the Boltons were indicted, attorney Joe Sam Owen ("Owen") enlisted as counsel of record on behalf of Charles. Linda was represented by several different attorneys before trial, and by attorney Robert McDuff at trial and sentencing.

Prior to trial, the government stated its intent to introduce business records, checks, check registers, and tax returns of an individual named John Lee ("Lee"), who, through his law practice, Lee P.A., was involved with the Boltons, as business or public records. The government also subpoenaed Lee to testify at trial, and Charles subpoenaed a large number of checks from Lee's law practice as well as Lee's casino gambling records.

Before trial, Lee hired attorney Rick Simmons who moved to quash a subpoena by the government to testify at trial on grounds that Lee would be invoking his Fifth Amendment privilege against self-incrimination. The district court denied the motion, but the parties stipulated at the outset of trial that Lee would not actually testify even if called.[3] The parties also stipulated that records or summaries of records were admissible as business records, and the Boltons stipulated to the authenticity of their handwriting on various exhibits. The parties further stipulated that Lee had invoked his Fifth Amendment privilege, and the jury was instructed that Lee would not be called as a witness.

The Boltons' three-day jury trial began in September 2016. At trial, the government presented evidence that the Boltons treated money received by their two businesses as "loans" rather than "income" when reporting their business income on their personal income tax returns, prepared by Renee

---

[3] The district court ruled that the Boltons could comment at trial on Lee's invocation of his Fifth Amendment privilege.

4

No. 17-60502
c/w No. 17-60576

Moore ("Moore") of Nicholson and Company, thus falsely reducing their tax liability. The deposits in question included checks from various entities and individuals, including Lee and Manheim Mississippi Auto Auction.

The jury ultimately convicted Charles on four counts of attempted tax evasion and all five counts of filing false tax returns. The jury acquitted each Bolton on one count of attempted tax evasion, failed to reach a verdict as to Linda on the remaining attempted tax evasion counts, and convicted Linda on all five counts of filing false tax returns.

The presentence reports ("PSRs") for Charles and Linda described an interview (referred to as an "FBI 302") of Lee by federal agents regarding checks he had given to Charles. Linda moved for a new trial based on an alleged discrepancy between the information in the FBI 302 and the testimony of Agent Luker. Linda also argued that the failure to disclose the substance of the interview violated the government's discovery obligations and constituted a *Brady* violation. Charles joined the motion. The district court denied the new trial motion, finding no discrepancy between Agent Luker's trial testimony and the information in the FBI 302.

Three days before sentencing, Charles's attorney, Owen, advised the court that Charles had obtained new counsel and that Charles would be complaining about his (Owen's) handling of the case. On the day of sentencing, Charles sought to be represented by new counsel, Willie J. Huntley—an out-of-state attorney who said he would need more time to review the case before being ready to proceed. The district court declined to grant a continuance and offered Charles the choice of being represented at sentencing by Owen or by an attorney from the Federal Public Defender's Office. Ultimately, Charles was represented at sentencing by Owen, and Huntley was allowed to assist.

5

No. 17-60502
c/w No. 17-60576

In sentencing Charles, the district court upwardly varied from the guidelines range of 27 to 33 months, imposing a 45-month term of imprisonment. The variance was based on the district court's finding that he had stolen food inventory from the FCSO Detention Center and used the food at his Sports 22 restaurant and catering business. The district court also imposed three years of supervised release with a special condition requiring payment of $145,849.78 in restitution and a $10,000 fine. Charles reported to federal prison on May 3, 2017. He then moved the district court for release pending appeal, which the district court denied.[4]

After sentencing, Owen sought and received permission to withdraw as counsel of record for Charles. Three days after entry of the judgment, Charles filed a notice of appeal, and also filed three motions seeking a new trial or vacatur of his conviction and sentence. Among numerous other arguments, Charles argued that his representation by Owen was paid for by Lee and was therefore tainted by a conflict of interest. This court remanded the case pursuant to Federal Rule of Appellate Procedure 12.1(b) so that the district court could rule on the motions, expressly declining to retain jurisdiction.

Following remand, the district court issued an order reviving the pending motions, setting briefing deadlines, and ordering former counsel Owen and McDuff to respond to various allegations of ineffective assistance of counsel. The government filed a consolidated response to all of the Boltons' pending motions, as did Owen and McDuff. On July 3, 2017, the district court denied the new trial motions. Charles noticed his appeal on July 12 (entered July 13), citing the district court's July 3 new trial order. Linda noticed her appeal on July 13, also citing the district court's July 3 new trial order.

---

[4] This court denied Charles's motion for release pending appeal on August 7, 2017.

6

No. 17-60502
c/w No. 17-60576

Owen asked the district court to deem the attorney-client privilege and
the work-product doctrine waived so that he could respond to the Boltons'
allegations of conflict and ineffective assistance of counsel. Charles objected
and Owen noted that, in multiple motions, he and his firm were accused of
harboring a conflict-of-interest and a litany of instances of ineffective
assistance. The government supported the waiver. Charles then sought a
protective order, which Owen opposed, precluding the availability of the
documents to the prosecution, law enforcement, or the public. Owen identified
the claims against him as involving an alleged conflict about Lee, trial
preparation and use of an expert, jury selection, trial strategy, exhibits,
witnesses, Linda's decision not to testify, Charles's decision not to testify,
Charles's conviction, the PSR and objections, the in-camera sentencing
conference, the sentencing hearing, and the post-sentencing submissions
under seal.

The district court acknowledged that Charles had waived his attorney-
client privilege and work-product doctrine but determined that the documents
should be filed under seal and not served on the government. The government
moved for reconsideration on grounds that it would need the materials to
respond to any appeal filed by Charles and to defend against allegations of
ineffective assistance of counsel under 28 U.S.C. § 2255. The district court
granted the government's motion and placed Owen's response to Charles's new
trial motions on the public docket, finding that Charles "did not point to a
single piece of formerly privileged evidence which would prejudice him either
on appeal or in the event of a new trial." Charles noticed his appeal of that
order (appeal No. 17-60576). Charles's second appeal, No. 17-60576, was
consolidated with the existing appeal of the Boltons' convictions and sentences,
No. 17-60502.

7

No. 17-60502
c/w No. 17-60576

## II. Discussion

The Boltons each raise a host of arguments on appeal including but not limited to: (1) whether the indictment was sufficient; (2) whether the evidence was sufficient to support the Boltons' convictions; (3) whether one or more *Brady* violations took place in the proceedings below; (4) whether the Boltons' Confrontation Clause rights were violated; (5) whether the government engaged in prosecutorial misconduct during trial; (6) whether the district court erred in its issuance of jury instructions; (7) whether the district court erred in imposing the Boltons' sentences; (8) whether Charles was denied his right to conflict-free choice of counsel or received ineffective assistance of counsel; and (9) whether the district court erred in holding that Charles waived his attorney-client privilege. We address each issue in turn.

*Indictment*

Charles argues that his indictment was insufficient. Because Charles failed to preserve his objection to the alleged defective indictment, plain error review applies. *United States v. Robinson*, 367 F.3d 278, 285 (5th Cir. 2004). "Plain error exists if (1) there is an error, (2) the error is plain, . . . (3) the error affect[s] substantial rights and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014) (per curiam) (internal quotation marks and citation omitted).

"An indictment is legally sufficient if (1) 'each count contains the essential elements of the offense charged,' (2) 'the elements are described with particularity,' and (3) 'the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense.'" *United States v. Fairley*, 880 F.3d 198, 206 (5th Cir. 2018) ("'[T]he validity of an indictment is

8

No. 17-60502
c/w No. 17-60576

governed by practical, not technical considerations,' and '[t]he basic purpose behind an indictment is to inform a defendant of the charge against him[.]'").

The government charged five counts of attempted tax evasion and aiding and abetting in attempted tax evasion for the tax years 2009 through 2013 in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2 (Counts 1-5), and five counts of filing false tax returns and aiding and abetting in the filing of false tax returns for the tax years 2009 through 2013 in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2 (Counts 6-10).

A. Tax Evasion

"The elements of [§7201 tax evasion are]: (1) willfulness, (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Nolen,* 472 F.3d 362, 377 (5th Cir. 2006). The indictment charged that, for the tax evasion counts, the Boltons "did willfully attempt to evade and defeat a large part of the income tax due and owing by defendants to the United States of America by, among other things, preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, on behalf of defendants, which was filed with the Internal Revenue Service." The indictment further alleged that the Boltons attempted to evade and evaded the assessment of their income taxes by cashing tens of thousands of dollars in checks purportedly issued in payment for liquor, wine, and catering services to prevent those payments from being recorded on their business bank statements; providing deceptive records to their tax return preparer; and making false statements to their tax return preparer that some payments for goods and services were loans. When compared to the elements required to prove tax evasion under § 7201, the indictment was sufficient in that it alleged with specificity the affirmative acts willfully taken by the

9

No. 17-60502
c/w No. 17-60576

Boltons to evade the tax they knew they owed, provided the Boltons notice of the alleged crime, and protected them from subsequent prosecution for the same crime. *Fairley*, 880 F.3d at 206.

B. Filing False Tax Returns

"A person commits the felony of filing a false tax return in violation of 26 U.S.C. § 7206(1) when he 'willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.'" *United States v. Bishop*, 264 F.3d 535, 546 (5th Cir. 2001) (quoting 26 U.S.C. § 7206(1)).

The indictment alleged that the Boltons "did willfully make and subscribe to a joint United States Income Tax Return, Form 1040, which was verified by a written declaration that it was made under penalty of perjury and was filed with the Internal Revenue Service [which] defendants herein did not believe to be true and correct as to every material matter for each calendar tax year noted [2009–2013]" in that they knew and believed they had failed to report a substantial amount of income on Line 22 of the Form.

Viewing the language of the indictment against the elements required to prove the crime of filing a false tax return, the indictment was sufficient in that it alleged with specificity the Boltons' falsification of the tax returns, provided the Boltons notice of the alleged crime, and protected the Boltons from subsequent prosecution for the same crime. *Fairley*, 880 F.3d at 206. Accordingly, Charles failed to show plain error with respect to the sufficiency of the indictments for tax evasion and filing false tax returns. *Garcia-Carrillo*, 749 F.3d at 378. In light of this holding, we do not reach Charles's alternative arguments as to the alleged insufficiency or defectiveness of the indictment.

10

No. 17-60502
c/w No. 17-60576

*Sufficiency of the Evidence*

Both Charles and Linda argue that the evidence was insufficient to support the jury's verdicts of guilt against them as to the crimes of tax evasion (Charles) and filing false tax returns (Charles and Linda). The Boltons preserved their challenges to the sufficiency of the evidence by moving for and renewing their motions for a judgment of acquittal. Accordingly, "[w]e review preserved challenges to the sufficiency of the evidence de novo, but we are 'highly deferential to the verdict.'" *United States v. Scott*, 892 F.3d 791, 796 (5th Cir. 2018).

"When reviewing the sufficiency of the evidence, we view all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Id.* It is the province of the jury to "weigh any conflicting evidence and to evaluate the credibility of witnesses." *Id.* at 796–97. We consider the evidence "sufficient to support a conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 797. Our question is whether "the jury's verdict was reasonable, not whether we believe it to be correct." *Id.*

The jury convicted Charles on four of the five counts of tax evasion. Linda was not convicted of tax evasion. 26 U.S.C. § 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony[.]" "The elements of [§ 7201 tax evasion are]: (1) willfulness, (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *Nolen*, 472 F.3d at 377. "Affirmative acts that satisfy the [third] element may include keeping double sets of books, concealment of assets, or 'any conduct, the likely effect of which would be to mislead or to

11

conceal.'" *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009). To prove willfulness "the government must show that: (1) the law imposed a duty on the defendant; (2) the defendant knew of that duty; and (3) the defendant voluntarily and intentionally violated that duty." *Id.* "Such evidence is ordinarily circumstantial, since direct proof is often unavailable." *United States v. Kim*, 884 F.2d 189, 192 (5th Cir. 1989). To prove a tax deficiency the government must establish that the taxpayer had unreported taxable income. *United States v. Conaway*, 11 F.3d 40, 43 (5th Cir. 1993).

The jury convicted both Charles and Linda of five counts of filing false tax returns, or aiding and abetting in filing false tax returns, for the years of 2009 through 2013. A person commits the felony of filing a false tax return in violation of 26 U.S.C. § 7206(1) when he "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter[.]"

At the Boltons' trial, the government presented sufficient evidence that Charles evaded taxes for the years 2010 through 2013 and that the Boltons filed false tax returns in which they consistently underreported their income from 2009 through 2013. The government's evidence included numerous instances when the Boltons (1) cashed a significant number of checks before they were recorded in the Boltons' financial books, and (2) designated significant amounts of income as non-taxable loans. Agent Luker testified at trial that he had traced the income derived from the cashed checks and the checks marked as loans in the Boltons' records and concluded that they had a tax deficiency resulting from underreporting their income from their two businesses. Agent Luker used a multitude of specific examples of the checks marked as loans and the checks that were cashed before they "hit the books"

12

No. 17-60502
c/w No. 17-60576

to illuminate the discrepancy between the Boltons' actual income and their reported income. The government also presented a number of charts at trial which featured year-by-year summary computations of the Boltons' "reported" versus their "corrected" taxable income resulting from cashed checks and checks marked as loans.

Consequently, given this court's high level of deference to the jury's verdict and the mountain of evidence presented at trial in support of the jury's verdict, specifically proving the elements of tax evasion as to Charles and filing false returns as to both Charles and Linda, we hold that the evidence was sufficient to support the Boltons' convictions. *Scott*, 892 F.3d at 796–97. In light of this holding, we do not reach either Charles's or Linda's alternative arguments as to the alleged insufficiency of the evidence.

*Alleged* Brady *Violations*

The Boltons contend that the *Brady* material suppressed by the government includes: (1) a Department of Justice memorandum dated July 29, 2015, (2) an FBI 302 interview report documenting Lee's statements to law enforcement that allegedly contradict the trial testimony of Agent Luker, (3) a subpoena issued by the government to Carl Nicholson ("Nicholson"), and (4) Lee's plea agreement. "We review a district court's determination on a *Brady* claim de novo, though we defer to factual findings underlying the district court's decision." *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018) (citing *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017)).

Under *Brady*, "the government violates a defendant's due process rights if it withholds evidence that is favorable to the accused and material to the defendant's guilt or punishment." *Swenson*, 894 F.3d at 683 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The rule is applied regardless "of the good faith or bad faith of the prosecution . . . [and] extends to impeachment evidence

13

No. 17-60502
c/w No. 17-60576

as well as exculpatory evidence." *Id.* (citing *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006); *Brady*, 373 U.S. at 87). For a defendant to prevail on a *Brady* claim, he "must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *Id.* The usual remedy for a *Brady* violation is a new trial. *Swenson*, 894 F.3d at 684.

The Boltons fail to make a successful argument on any of their purported *Brady* claims. With respect to Charles's argument regarding the DOJ memorandum dated July 29, 2015, that memo simply addressed conflicts within the US Attorney's Office, Mississippi division, and authorized transfer to the US Attorney's Office, Louisiana division. This subject matter has no bearing on Agent Luker's status as an IRS agent within the Department of Treasury. Moreover, the recusal information of the Mississippi division of the US Attorney's Office is immaterial to Charles's ability to "prepare a proper defense against the indictment" for his own crimes of tax evasion and filing false tax returns. Accordingly, the memorandum does not qualify as *Brady* material. *Swenson*, 894 F.3d at 683.

Both Charles and Linda argue that the FBI 302 interview report, which documents Lee's statements to law enforcement that allegedly contradict Agent Luker's trial testimony, was improperly suppressed *Brady* material. They claim that they would have used Lee's statements in the interview that he could not remember what each and every check he wrote to the Boltons' businesses was for to contradict Agent Luker's testimony that Lee told him that the checks were written for food and liquor. As the district court properly observed, Lee's statements did not go to the truth of Agent Luker's testimony or to his own credibility because they were intended to highlight the suspicious nature of all the money going from Lee's firm to the Boltons' restaurant under

14

No. 17-60502
c/w No. 17-60576

the auspices of purchasing "business supplies"; they were not solicited to disprove Agent Luker's testimony that Lee had told him that the checks were written for food and liquor. *United States v. St. Junius*, 739 F.3d 193, 202 (5th Cir. 2013) ("Under Federal Rule of Evidence 801(c), hearsay is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted . . . The rule against hearsay does not apply when an out-of-court statement is offered for some purpose other than to prove the truth of the matter asserted."). Moreover, Lee's statement to Agent Luker that the checks were written for food and liquor does not contradict or undermine his statement in the FBI 302 interview that he could not remember what each individual check was for when he was shown a spreadsheet of payments at a later date. It is certainly conceivable that Lee stood by his story that all of the checks were written either for food or liquor without claiming to remember what each specific check was written for. Accordingly, the FBI 302 interview report does not qualify as *Brady* material. *Swenson*, 894 F.3d at 683.

Charles argues that the subpoena issued by the government to Nicholson was improperly suppressed *Brady* material because it "addressed the nature of certain checks that were written from John Lee to Joe Sam Owen and provided written acknowledgement of those checks." As the government observes, however, Charles's argument on this issue goes to the purported conflict of interest that he believed his attorney had—not to his own defense of the charges against him for tax evasion and filing false tax returns. Accordingly, the subpoena was immaterial and neither exculpatory nor impeaching. Thus, it did not qualify as *Brady* material. *Swenson*, 894 F.3d at 683.

No. 17-60502
c/w No. 17-60576

Finally, Charles fails to brief his argument that Lee's plea agreement was improperly suppressed *Brady* material and thus has waived the issue. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure [to] adequately [] brief an issue on appeal constitutes waiver of that argument."). In any event, the plea agreement was signed after the Boltons were tried and convicted and thus could not have conceivably qualified as *Brady* material. *Swenson*, 894 F.3d at 683.

<u>Confrontation Clause Rights</u>

Both Charles and Linda argue that their Confrontation Clause rights were violated when Agent Luker was permitted to testify as to out-of-court statements that Lee had made to him since Lee was not available for cross-examination at trial given his invocation of the Fifth Amendment right against self-incrimination. "Alleged Confrontation Clause violations are reviewed *de novo* and subject to harmless error analysis." *United States v. Garcia*, 887 F.3d 205, 209 (5th Cir. 2018). However, "[a] defendant may not complain on appeal of errors that he himself invited or provoked the [district] court . . . to commit." *United States v. Salazar*, 751 F.3d 326, 332 (5th Cir. 2014) (citing *United States v. Wells*, 519 U.S. 482, 487–88 (1997)). Only errors attributed to the actions of the defense will be considered invited errors. *Id.* The standard of review for invited error is higher than that of plain error review. *Id.* "We will not reverse on the basis of invited error, absent manifest injustice." *Id.*

"The Confrontation Clause guarantees a defendant the opportunity for effective cross-examination." *United States v. Lockhart*, 844 F.3d 501, 510 (5th Cir. 2016) (citing *Delaware v. Fensterer*, 474 U.S. 15, 19–20 (1985)). The Supreme Court has held "that the prosecution violates this clause when it introduces 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior

No. 17-60502
c/w No. 17-60576

opportunity for cross-examination.'" *Garcia*, 887 F.3d at 212 (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)).

During the trial, the district court ruled that the government could not elicit testimony concerning Lee's out-of-court statements on grounds that Lee was unavailable to be cross-examined because he had asserted his Fifth Amendment privilege against self-incrimination and would not testify at trial. The district court ruled that any out-of-court statement by Lee would be considered hearsay without an applicable exception. The record reflects that the government did not question Agent Luker or anyone else about the content of any out-of-court statement by Lee.    However, during Owen's cross-examination of Agent Luker, he asked Luker to "[t]ell the jury, please, what business supply John Lee purchased from Sports 22." The district court interrupted and suggested that the solicited testimony would be inadmissible hearsay and a bench conference was held with all counsel. Outside of the presence of the jury, both defense counsel urged the court to allow the line of questioning and acknowledged that Agent Luker's answers would involve statements that Lee had made to him. The bench conference ended and Owen stated to Agent Luker: "So if I understand your testimony, what John Lee has told you with reference to the cashed checks is that he bought $273,520 worth of food and liquor from Sports 22 and Hall's Package." Agent Luker responded, "Over the five years, that's correct." Owen commented "You will agree that's a lot of ribs, isn't it?" and Agent Luker answered affirmatively.

Given the above record evidence, we conclude that the Boltons, through their counsel, invited the error of soliciting Agent Luker to testify as to statements that Lee made, resulting in the admission of hearsay. *Salazar*, 751 F.3d at 332.   Considering, however, the substantial amount of evidence presented at trial against the Boltons that did not include the checks written

17

No. 17-60502
c/w No. 17-60576

by Lee, admission of the hearsay statements did not result in a "manifest injustice." *Id.*

Charles claims he dissented from Owen's decision to solicit the hearsay statements but he misinterprets the law on this issue. As the government points out, the right to confrontation is susceptible to waiver by counsel but when a defendant does not object to his attorney's decision at trial or present an argument as to why his counsel's actions could not have been a legitimate trial tactic, he waives that right. *United States v. Ceballos*, 789 F.3d 607, 616 (5th Cir. 2015) (quoting *United States v. Reveles*, 190 F.3d 678, 683 (5th Cir. 1999) ("When a defendant has waived a right, the district court cannot be said to have erred by failing to override *the intentions of the defendant's counsel* by asserting the right *sua sponte*." (emphasis in original))); *see also United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980) (holding "that counsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy"). Here, the Boltons have failed in both respects since they did not object to their respective counsels' decisions to solicit the hearsay statements at trial, and they have failed to present any type of argument on appeal as to why admission of the statements could not have been a legitimate trial tactic. *Ceballos*, 789 F.3d at 616.

Based on a close review of the trial record, we hold that the district court's admission of the hearsay statements was invited error, solicited by both sets of defense counsel. *Salazar*, 751 F.3d at 332. The invited error did not rise to the level of manifest injustice given the substantial evidence presented at trial to support the Boltons' convictions, aside from the evidence involving

18

No. 17-60502
c/w No. 17-60576

the checks written by Lee. *Id.* Further, to the extent they attempt to argue otherwise, the Boltons have failed to show that they have not waived their Confrontation Clause rights under *Ceballos.* 789 F.3d at 616.

*Prosecutorial Misconduct*

According to Charles, "his Fifth and Fourteenth Amendments rights to due process of law [were] violated where the Government engaged in (1) improper vouching for the credibility of its witnesses, (2) making false statements to the jury, (3) engaging in derogatory name calling, and (4) making improper personal impressions." He urges de novo review.

This court conducts a two-part analysis of prosecutorial misconduct. *United States v. Meza*, 701 F.3d 411, 429 (5th Cir. 2012). First, we consider whether the prosecutor made an improper remark and if so, we look next to see if the remark affected the substantial rights of the defendant. *Id.* Usually, we review the first question de novo and the second for abuse of discretion. *Id.* We will conclude that "a defendant's substantial rights are affected only where the error in question affected the outcome of the district court proceedings." *Id.* To determine whether the error affected the outcome of the proceedings, we must "assess (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Id.* However, when a defendant fails to object contemporaneously to the prosecutor's allegedly improper statements, we review his prosecutorial misconduct claims for plain error. *United States v. Bennett*, 874 F.3d 236, 247 (5th Cir. 2017). Under this standard, a defendant must show an error that is plain and affects his substantial rights. *Id.* at 247–48. "If these conditions are present, we may exercise our discretion to correct the error if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 248.

19

No. 17-60502
c/w No. 17-60576

"In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden." *Id.* at 247. This court does "not lightly make the decision to overturn a criminal conviction on the basis of a prosecutor's remarks alone." *Id.* "We also presume that a jury can and will follow an instruction that attorneys' statements are not evidence, 'unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating.'" *Id.* Our ultimate question is "whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id.*

Despite the fervor of Charles's claims of prosecutorial misconduct, the trial record does not support them. Moreover, the district court instructed the jury at the start of trial that attorney statements are not evidence, rendering any potential prejudice harmless.[5] *Meza*, 701 F.3d at 429. Additionally, given the strength of the evidence presented against the Boltons at trial, it is unlikely that the verdict would have been different absent the prosecutor's remarks. *Id.* The prosecutor's alleged misconduct, even if proven, did not amount to error, plain or otherwise. *Bennett*, 874 F.3d at 247–48.

*Jury Instructions*

According to Charles, "[t]he cumulative errors in the indictment, jury instructions, jury verdict form and response to jury notes violated [his] Fifth

---

[5] The district court stated:

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence which it intends to put before you so that you will have an idea or a roadmap as to what the government's case is going to be. Just as the indictment is not evidence, neither is the opening statement evidence. Its purpose is only to help you understand what the evidence will be and what the government will try to prove.

No. 17-60502
c/w No. 17-60576

and Fourteenth Amendment rights to due process and a fair trial and resulted in faulty guilty verdicts and sentences." We disagree. A review of Charles's seven arguments on this issue in the context of the record reveals that he has failed to show plain error with respect to the indictment (for reasons previously explained), the jury instructions, or the jury verdict form. *See Fairley*, 880 F.3d at 208. We first note that any instances when the district court misstated an oral instruction were subsequently cured by the correct written instructions that were provided to the jury. Thus, he has failed to show plain error on any of his arguments to this effect. *Id.* We reject all of Charles's additional claims about the jury instructions as meritless.

*Sentencing*

In sentencing Charles, the district court upwardly varied from the guidelines range of 27 to 33 months, adding an additional 12 months for the unpaid taxes on the FCSO food theft, and sentenced him to 45 months of imprisonment. The district court also imposed three years of supervised release with a special condition requiring payment of $145,849.78 in restitution and a $10,000 fine. The district court sentenced Linda to 30 months of imprisonment, along with one year's supervised release, a $6,000 fine, and restitution of $145,849.78, owed jointly and severally with Charles.

A. Loss Amount

Charles and Linda both argue that the district court improperly calculated the loss amount. We disagree. A district court's loss calculation is a factual finding that this court reviews for clear error. *See Fairley*, 880 F.3d at 215. The district court's method of calculation is an application of the guidelines that this court reviews de novo. *Id.* "[T]he guidelines emphasize the deference that must be shown to the sentencing judge, who is in a unique position to assess the applicable loss, so this court need only determine

21

No. 17-60502
c/w No. 17-60576

whether the district court made 'a reasonable estimate of the loss.'" *Id.* "Under the Sentencing Guidelines, the base offense level for a tax fraud offense derives from the amount of loss that is the object of the offense." *United States v. Johnson*, 841 F.3d 299, 303 (5th Cir. 2016). If the tax loss is uncertain, the district court is permitted to "make a reasonable estimate based on the available facts." *Id.* "To prevail on an argument that the district court's calculation of tax loss was clearly erroneous, a defendant must introduce evidence to contradict or rebut the alleged improper computation of the loss." *Id.*

The district court may include tax losses in the total loss computation that qualify as relevant conduct under U.S.S.G. § 1B1.3, whether charged or not. *See United States v. Powell*, 124 F.3d 655, 666 (5th Cir. 1997) ("[T]he facts of [the defendant's] conduct make clear that the district court did not clearly err in deciding that the state tax evasion was part of [the defendant's] relevant conduct. It was therefore proper for the district court, in calculating [the defendant's] sentence, to include the amount of state fuel excise taxes evaded in the total 'tax loss' used to determine [the defendant's] base offense level.").

"It is well established . . . that a 'jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.'" *United States v. Andradi*, 309 F. App'x 891, 893 (5th Cir. 2009) (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997)).

Here, the district court's total loss amount of $145,849.78 (as reflected in the PSR) was based on the tax owed as a result of the charged offenses ($117,369.84) and the estimated amount of tax that the Boltons failed to pay ($28,479.94) on the food stolen from the FCSO Detention Center that was used at their businesses. Testimony was presented at trial that the Boltons received

22

No. 17-60502
c/w No. 17-60576

approximately $273,000 worth of checks from Lee as income. Charles incorrectly argues that using the tax loss amounts from the Lee checks was error because "[t]he John Lee cashed checks were proven to be false based on the 'inadmissible hearsay' testimony of IRS Agent Luker." As we have stated, Agent Luker's testimony that Lee told him that the checks were for "food and liquor" does not negate Lee's statements in the FBI 302 interview that he could not remember what each individual check was for. Additionally, these statements do nothing to undermine the information in the PSR or show that it "was inaccurate or materially untrue." *United States v. Scher*, 601 F.3d 408, 414 (5th Cir. 2010) ("[The defendant] simply failed to produce reliable evidence supporting an alternate number or demonstrating that the information in the PSR was inaccurate or materially untrue.").

Further, the district court properly included the uncharged tax loss of $28,479.94 on grounds that the tax loss from the stolen food qualified as relevant conduct. This conclusion was supported by witness statements and detailed information in the PSR. *Powell*, 124 F.3d at 664 (observing that relevant conduct includes "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" (quoting U.S.S.G. § 1B1.3(a)(2))).

Additionally, the district court's inclusion of the loss amount from Count 1 was proper. Charles's acquittal on Count 1 did not prevent the district court from considering the conduct underlying the acquitted charge as long as it was proven by a preponderance of the evidence, which it was in this case. *Watts*, 519 U.S. at 157; *Andradi*, 309 F. App'x at 893. There was sufficient evidence presented at trial to prove that the Boltons committed tax fraud in 2009 and they were both convicted of filing false returns that year.

No. 17-60502
c/w No. 17-60576

In sum, because the Boltons have failed to produce sufficient rebuttal evidence as to the loss amount, the district court did not clearly err in adopting the PSR's loss amount of $145,849.78. *Scher*, 601 F.3d at 414.

B. <u>Sentences</u>

Charles and Linda both argue that their sentences were substantively unreasonable or otherwise defective. Neither Charles nor Linda objected to their sentences in the proceedings below so their claims on appeal are reviewed for plain error. *See United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010).

"A sentence within the Guidelines range is presumptively reasonable, and this presumption is rebutted only if the appellant demonstrates that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors." *United States v. Hernandez*, 876 F.3d 161, 166 (5th Cir. 2017). On the other hand, "[a] non-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors set forth in § 3553(a) where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017). When "reviewing a challenge to the length of a non-Guidelines sentence, this court 'may take the degree of variance into account and consider the extent of a deviation from the Guidelines.'" *Id.* We give "'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Charles argues that his sentence was substantively unreasonable or otherwise defective and that the district court's upward variance was not

24

No. 17-60502
c/w No. 17-60576

warranted. This argument fails. The district court based the upward variance on relevant § 3553(a) factors, including Charles's history and characteristics (specifically his theft of food from the FCSO detention center) and the need to deter future criminal conduct. *See* 18 U.S.C. § 3553(a)(1)–(2). The district court was within its discretion to use the food theft as a basis for an upward variance because it was admitted as relevant conduct in the PSR and was not established to be materially untrue, inaccurate or unreliable. *See* U.S.S.G. § 1B1.3(a)(2); *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013). As the government further points out, the district court was permitted to consider the food theft in the context of the upward variance even it was determined not to be relevant conduct. *United States v. Rhine*, 637 F.3d 525, 528–29 (5th Cir. 2011). Moreover, contrary to Charles's assertion, the record reveals that the district court explained that it was imposing the upward variance because, among other reasons, "[t]here was a culture of corruption in the Forrest County Jail, and [Charles] knew it and . . . allowed it to go on." For these reasons, Charles has failed to show that the district court plainly erred in imposing his sentence or in applying the sentencing factors under § 3553(a). *Nguyen*, 854 F.3d at 283. His remaining contentions on this issue are denied as meritless.

Linda claims that her sentence was substantively unreasonable because the loss amount was an inadequate measure of culpability and the district court failed to consider other relevant sentencing factors such as her age and the fact that she had "nearly zero chance of recidivism." Her argument is misplaced. This court has acknowledged that "[a] sentence within the Guidelines range is presumptively reasonable, and this presumption is rebutted only if the appellant demonstrates that the sentence does not account for a factor that should receive significant weight, gives significant weight to

25

No. 17-60502
c/w No. 17-60576

an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors." *See Hernandez*, 876 F.3d at 166. Although Linda attempts to argue that the total loss amount was an inadequate measure of her culpability, she was convicted by a jury on five counts of filing false tax returns and she was unable to present evidence to rebut the loss amount as shown in the PSR or to prove that it "was inaccurate or materially untrue" in general or as it related specifically to her. *Scher*, 601 F.3d at 414. While Linda's age and allegedly low chances of recidivism might be relevant considerations, the district court was free to give other § 3553(a) factors more significant weight in imposing her sentence. 18 U.S.C. § 3553(a). Accordingly, Linda has failed to rebut the presumption of reasonableness afforded to her within-guidelines sentence. *United States v. Gomez-Herrera*, 523 F.3d 554, 565–66 (5th Cir. 2008) ("As [the defendant] was sentenced within a properly calculated Guidelines range, his sentence is entitled to a presumption of reasonableness that we see no reason to disturb."). Consequently, we hold that the district court did not plainly err in imposing Linda's sentence. *See Ruiz*, 621 F.3d at 398.

C. Restitution

Charles argues that the district court erred in imposing restitution. We review Charles's claim that the district court lacked the authority to impose restitution de novo. *See United States v. Westbrooks*, 858 F.3d 317, 327 (5th Cir. 2017). We review the restitution amount imposed by the district court for abuse of discretion. *United States v. Benns*, 810 F.3d 327, 329 (5th Cir. 2016).

"Restitution to the IRS may be imposed as a condition of supervised release under § 3583[.]" *Nolen*, 472 F.3d at 382. To calculate the restitution amount, the district court is granted wide latitude and "may simply make a reasonable estimate based on the available facts." *Westbrooks*, 858 F.3d at 329.

26

No. 17-60502
c/w No. 17-60576

Nevertheless, "a restitution award due prior to the commencement of a term of supervised release is a component of the sentence, not a condition of supervised release," and is therefore unauthorized. *Id.* at 328.

Charles's general challenge to the district court's authority to impose restitution fails as it is well-established that "[r]estitution to the IRS may be imposed as a condition of supervised release under § 3583[.]" *Nolen*, 472 F.3d at 382. However, he does correctly argue and the government concedes that "a restitution award due prior to the commencement of a term of supervised release is a component of the sentence, not a condition of supervised release," and is therefore unauthorized. *Westbrooks*, 858 F.3d at 328. Here, the district court's condition that the restitution amount was due "immediately"[6] was unauthorized under this court's precedent in *Westbrooks*. *Id.* at 328 ("We thus conclude that the judgment contains an error in ordering that [the defendant] begin making payments while in prison—a timeline that exceeds the court's statutory authority. But that error does not overcome the other indications that the court intended to impose restitution under the statute permitting it as part of supervised release."). Accordingly, we modify the judgment to reflect that the Boltons do not owe restitution until their terms of supervised release begin. *Id.* ("The most efficient remedy in this situation is to modify the judgment so that [the defendant] does not owe restitution until she begins her term of supervised release." (citing 28 U.S.C. § 2106)).

Finally, as to the amount of restitution, this court gives the district court "wide latitude" to determine the amount of loss based on the available facts.

---

[6] The district court stated at sentencing: "It's ordered that the defendant pay a thousand dollars a month toward the restitution beginning immediately. Payment begins and shall continue while he is in prison."

No. 17-60502
c/w No. 17-60576

*Westbrooks*, 858 F.3d at 329. Because the district court used the same figures to calculate the restitution amount that it used to calculate the damages amount, Charles has failed to show that the restitution award was an abuse of discretion. *See Scher*, 601 F.3d at 414. All of his remaining arguments on this issue are meritless.

<u>Conflict-Free Choice of Counsel or Ineffective Assistance of Counsel</u>

Charles claims that his trial counsel (Owen) "labored under an actual conflict of interest and provided unconstitutional representation before trial, during trial, and at sentencing because of a direct conflict of interest concerning Owen's relationship to attorney John Lee." Charles presented his allegations of conflict of counsel and ineffective assistance of counsel in three separate post-trial motions, all three of which moved for a new trial.

A district court's denial of a motion for a new trial is reviewed for abuse of discretion. *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016). "This standard is necessarily deferential to the trial court because we have only read the record, and have not seen the impact of the witnesses on the jury or observed the demeanor of the witnesses ourselves, as has the trial judge." *United States v. Stanford*, 823 F.3d 814, 838 (5th Cir. 2016). Questions of law are reviewed de novo. *United States v. Anderson*, 755 F.3d 782, 800 (5th Cir. 2014). When there are mixed questions of law and fact, this court reviews "the underlying facts for abuse of discretion, but the conclusions to be drawn from those facts de novo." *Stanford*, 823 F.3d at 838.

Whether a defendant's counsel labored under a conflict of interest is a mixed question of law and fact that this court reviews de novo. *United States v. Hernandez*, 690 F.3d 613, 619 (5th Cir. 2012). We also conduct a de novo review of the district court's determinations concerning ineffective assistance of counsel claims. *See United States v. Shepherd*, 880 F.3d 734, 740 (5th Cir.

No. 17-60502
c/w No. 17-60576

2018). A district court's decision to disallow substitution of counsel is reviewed
for abuse of discretion. *United States v. Jones*, 733 F.3d 574, 587 (5th Cir.
2013).

Although generally disfavored, a new trial may be granted on the basis
of newly discovered evidence when "(1) the evidence is newly discovered and
was unknown to the defendant at the time of trial; (2) the failure to detect the
evidence was not due to a lack of diligence by the defendant; (3) the evidence
is not merely cumulative or impeaching; (4) the evidence is material; and (5)
the evidence if introduced at a new trial would probably produce an acquittal."
*Anderson*, 755 F.3d at 800; Fed. R. Crim. P. 33.

"The Sixth Amendment right to counsel includes the 'right to
representation that is free from any conflict of interest.'" *Hernandez*, 690 F.3d
at 618. Generally, this court will determine that "a conflict exists when defense
counsel allows a situation to arise that tempts a division in counsel's loyalties."
*Id.* "If a defendant chooses to proceed with representation by counsel who has
a conflict of interest, a district court must conduct what is commonly known as
a '*Garcia* hearing'[7] to ensure a valid waiver by the defendant of his Sixth
Amendment right." *Id.* A district court's requirement to conduct a *Garcia*
hearing only exists if there is an actual conflict of interest and not just a
"speculative or potential conflict." *Id.* at 618–19.

Ineffective assistance of counsel claims are evaluated under the legal
standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under
*Strickland*, a defendant must prove both deficient performance and prejudice.
466 U.S. at 700. To prove deficient performance, the defendant must show that

---

[7] *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975).

No. 17-60502
c/w No. 17-60576

his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Charles's claim that Owen labored under an actual conflict of interest when he represented Charles is meritless. In its memorandum opinion denying Charles's motions for post-trial relief, the district court carefully described the payment arrangements between Charles and Owen and the parties that paid Owen's retainer on Charles's behalf and Charles's knowledge of those payments. The district court clarified that Lee was not a government witness, he was never called to testify at trial, and the parties understood that if he were called, he would invoke his Fifth Amendment privilege against self-incrimination and not testify. Additionally, the record reflects that Charles gave Owen a check written by Lee to represent him in the food theft case back in 2014, but the tax fraud investigation against Lee did not commence until 2016. Consequently, Owen's acceptance of Lee's payment could not have created a conflict in Owen's representation of Charles. Moreover, as the district court noted, Charles not only knew of Lee's payments to Owen, he hand-delivered the checks. He has failed to meet the requirements for a new trial in that the evidence he attempts to use to support his motion was known and available to him several years prior to the commencement of his trial. *Anderson*, 755 F.3d at 800; Fed. R. Crim. P. 33.

Charles has also failed to show that he was denied his "counsel of choice" at sentencing. As the government points out, neither the district court nor Owen knew that Charles had retained new counsel to represent him at sentencing until shortly before the hearing. The district court was within its

No. 17-60502
c/w No. 17-60576

sound discretion to deny Charles's motion to continue as it was his fourth
motion. At that point, Huntley had neither sought pro hac vice admission nor
made an appearance to represent Charles. Nevertheless, the district court
"allowed the Boltons to confer privately with [Huntley], along with a
representative of the local Federal Public Defender's Office invited by the
district court, to determine who should represent [Charles]. Owen appeared
at sentencing on behalf of [Charles], but the district court allowed Huntley to
unofficially appear on [Charles]'s behalf as well." The district court went above
and beyond to accommodate Charles's "choice of counsel" at sentencing and his
choice to instruct Owen to continue to represent Charles alongside Huntley at
sentencing was not an abuse of discretion. *See United States v. Gonzalez-
Lopez*, 548 U.S. 140, 152 (2006) (observing that trial courts have "wide latitude
in balancing the right to counsel of choice against the needs of fairness and
against the demands of its calendar"). Likewise, the district court's decision to
deny Charles a *Garcia* hearing was proper given that the district court
conducted extensive fact-finding and concluded that no actual conflict existed.
*Hernandez*, 690 F.3d at 618–19 (noting that a district court's requirement to
conduct a *Garcia* hearing only exists if there is an actual conflict of interest
and not just a "speculative or potential conflict"). His remaining arguments
on this issue are denied as meritless.

*Attorney-Client Privilege Waiver*

Charles argues that his communications with Owen should be protected
by the attorney-client privilege, that he did not waive that privilege, and that
the district court erred in granting the government's motion for
reconsideration and unsealing the record. He also complains that the district
court did not have jurisdiction over his case when it issued an order on July
24, 2017 for him to file a response to the government's motion for

31

No. 17-60502
c/w No. 17-60576

reconsideration. He argues that this is because he filed an appeal on July 13, 2017 and this court had accepted jurisdiction which effectively divested the district court of jurisdiction over the proceedings at the time it ordered him to respond to the government's motion.

"In evaluating a claim of attorney-client privilege, we review factual findings for clear error and 'the application of the controlling law de novo.'" *In re Itron, Inc.*, 883 F.3d 553, 557 (5th Cir. 2018). The controlling law to be applied here is that of Mississippi, which governs . . . any assertion of attorney-client privilege or putative waiver thereof. *Id.* "Our task is to apply the law as would the Mississippi Supreme Court." *Id.* (citing *Guilbeau v. Hess Corp.*, 854 F.3d 310, 311 & n.4 (5th Cir. 2017)). Mississippi law allows clients the "privilege to refuse to disclose . . . any confidential communication[s] made to facilitate professional legal services, if those communications were made between the client . . . and [his] lawyer or among lawyers . . . representing the same client." *Id.* (citing Miss. R. Evid. 502(b) (internal quotation marks omitted)).

"By definition, the attorney-client privilege protects only confidential communications." *Id.* at 558 (citing Miss. R. Evid. 502(b) (emphasis omitted)). A client waives the privilege "[b]y disclosing such communications to third parties—such as by revealing them in open court[.]" *Id.* The waiver extends to related subject matter. *Id.* A client also "waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case." *Id.* That is to say, "when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Id.*

32

No. 17-60502
c/w No. 17-60576

The issue of whether Charles waived the attorney-client privilege arose out of Owen's filing a motion to deem the privilege and the work-product doctrine waived so that his responses to Charles's allegations could be filed in the public record. In June 2017, the district court found that Charles had waived the attorney-client privilege but ordered that Owen's responses to Charles's allegations against him be filed under seal until the conclusion of the Boltons' convictions and sentences. However, in its order placing Owen's responses under seal, the district court acknowledged "that Charles has repeated[ly] used both this Court and the media in an attempt to [publicly] vilify both Owen and the Government." The government filed a motion to reconsider requesting that the responses be unsealed. Charles was ordered to respond and the district court ultimately granted the government's motion for reconsideration stating that "[t]he Court is concerned only with previously privileged information which could prejudice Bolton on appeal or in the event of a new trial. Because Bolton makes no specific arguments towards any of the previously privileged information, the Court finds that the Motion for Reconsideration should be granted." Charles then filed a second notice of appeal, No. 17-60576, of the district court's order granting the motion for reconsideration and unsealing Owen's responses to Charles's allegations against him.

Charles's argument is unconvincing that the district court was divested of jurisdiction when it ordered him to file a response to the government's motion for reconsideration. The Supreme Court has held and this court has recently recognized that "[a]n appeal divests the district court of its jurisdiction 'over those aspects of the case involved in the appeal.'" *United States v. Pena*, 713 F. App'x 271, 272 (5th Cir. 2017) (per curiam) (unpublished) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985)). As

33

No. 17-60502
c/w No. 17-60576

Charles acknowledges, he has filed two appeals: (1) No. 17-60502, filed on July 13, 2017, pertaining to his convictions and sentences and (2) No. 17-60576, filed August 2017, pertaining to the district court's grant of the motion for reconsideration and the unsealing of Owen's responses. The only appeal pending at the time the district court issued its order to him to respond to the government's motion for reconsideration was No. 17-60502, the appeal pertaining to his convictions and sentences. The district court had not been divested of jurisdiction with respect to the issues involved in Charles's second appeal pertaining to his allegations against Owen, waiver of the attorney-client privilege, release of the work-product doctrine information, and unsealing the record. *Marrese*, 470 U.S. at 379; *Pena*, 713 F. App'x at 272.

Next, under controlling Mississippi law, Charles waived the attorney-client privilege when he charged Owen with providing him with ineffective assistance and further when he made public statements to third parties via the media, social media, the court, and the press, to publicly criticize and make derogatory comments about Owen and his firm's representation of him. *See In re Itron, Inc.*, 883 F.3d at 558 (noting that a client waives the privilege "[b]y disclosing such communications to third parties—such as by revealing them in open court" and "by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case"). The district court properly granted the government's motion for reconsideration to modify the protective order and unseal Owen's responses to Charles's allegations. *See United States v. Morales*, 807 F.3d 717, 723 (5th Cir. 2015). His remaining arguments on this issue are denied as meritless.

34

No. 17-60502
c/w No. 17-60576

### III. Conclusion

For the foregoing reasons, we AFFIRM the convictions and sentences of Charles and Linda Bolton and MODIFY the district court's judgment to show that the restitution owed by the Boltons does not become due until they begin their terms of supervised release.